Lionel Z. Glancy (#134180)
Michael Goldberg (#188669)
Robert V. Prongay (#270796)
GLANCY BINKOW & GOLDBERG LLP
1925 Century Park East, suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email:  info@glancylaw.com

*Counsel for Plaintiff Edward Todd*
[Additional Counsel on Signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD TODD, Individually and on Behalf of All Others Similarly Situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | **JURY TRIAL DEMANDED** |
| STAAR SURGICAL COMPANY, BARRY G. CALDWELL, DEBORAH ANDREWS, and STEPHEN P. BROWN, | |
| Defendants. | |

CLASS ACTION COMPLAINT

Plaintiff Edward Todd ("Plaintiff") brings this securities class action pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder on behalf of all investors who purchased or otherwise acquired STAAR Surgical Company ("STAAR" or the "Company") securities between February 27, 2013 and June 30, 2014, inclusive (the "Class Period"). The allegations herein are based upon Plaintiff's knowledge as to itself and its own acts and upon information and belief as to all other matters. Plaintiff's information and belief is based on, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, but was not limited to review of: (i) STAAR's public filings with the United States Securities and Exchange Commission ("SEC"); (ii) research reports and advisories by securities and financial analysis; (iii) publicly available presentations, reports, and press releases issued by STAAR; (iv) press releases and media reports; (v) publicly available presentations and reports about STAAR; and (vi) other publicly available information. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     STAAR designs, develops, manufactures and sells implantable lenses for the eye and delivery systems used to deliver lenses into the eye. The Company purports to be the leading maker of lenses used worldwide in corrective or "refractive" surgery, and also makes lenses for use in surgery that treats cataracts.   All of the lenses

manufactured by STAAR are foldable, which permits the surgeon to insert them through a small incision during minimally invasive surgery.

2.     This action arises from STAAR's nondisclosure and concealment of the significant regulatory violations at STAAR's Monrovia, California manufacturing facility (the "Monrovia Facility").  In 2011, the Company developed and initiated a project to consolidate STAAR's global manufacturing into a single site at the Monrovia Facility.  However, throughout the Class Period, STAAR – along with defendants Barry G. Caldwell ("Caldwell"), Deborah Andrews ("Andrews"), and Stephen P. Brown ("Brown") (collectively, with STAAR "Defendants") – made false and/or misleading statements and/or failed to disclose that the Company's Monrovia Facility:  (i) lacked adequate methodologies and facilities for the manufacture, packing, storage and installation of the Company's implantable lenses; (ii) lacked adequate procedures for documenting complaints, sterility testing, and maintaining required records; and (iii) as a result of the foregoing, the Monrovia Facility was not in conformity with current good manufacturing practice requirements at all relevant times.

3.     On June 30, 2014, the U.S. Food and Drug Administration ("FDA") publicly released a Warning Letter, dated May 21, 2014, concerning an inspection of STAAR's Monrovia Facility which took place from February 10, 2014 to March 21, 2014.  The FDA letter noted several regulatory violations at the facility and stated that, among other things, "the methods used in, or the facilities or controls used for" manufacture, packing, storage or installation of the Company's implantable lenses are

2

"not in conformity with the current good manufacturing practice requirements." The FDA further advised STAAR that "failure to promptly correct these violations may result in regulatory action being initiated by the FDA without further notice."

4.     On this news, STAAR shares declined $1.89 or nearly 11.25%, to close at $14.91 on July 1, 2014.

5.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant damages.

## JURISDICTION AND VENUE

6.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j (b) and 78t (a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

7.     This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

8.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).

9.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

10.    Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased STAAR common stock at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

11.    Defendant STAAR Surgical Company is a Delaware corporation that purports to design, develop, manufacture and sell implantable lenses for the eye and delivery systems used to deliver lenses into the eye.   STAAR operates its global administrative headquarters and the manufacturing facility in Monrovia, California. The Monrovia Facility principally makes Collamer and silicone intraocular lenses ("IOL"), and injector systems for its IOLs.   During the Class Period, the Company's stock traded on the NASDAQ Stock Market under the symbol "STAA."

12.    Defendant Barry G. Caldwell was, at all relevant times, the President, Chief Executive Officer and a director of STAAR.

13.    Defendant Deborah Andrews served as the Company's Chief Financial Officer until September 2013.

14.    Defendant Stephen P. Brown was appointed as the Chief Financial Officer of STAAR in September 2013.

15.    Defendants Caldwell, Andrews, and Brown are referred to herein, collectively, as the "Individual Defendants."

4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SUBSTANTIVE ALLEGATIONS

### Background

16.    STAAR designs, develops, manufactures and sells implantable lenses for the eye and delivery systems used to deliver lenses into the eye. The Company purports to be the leading maker of lenses used worldwide in corrective or "refractive" surgery, and also manufactures lenses for use in surgery that treats cataracts. All of the lenses the Company manufactures are foldable, which permits the surgeon to insert them through a small incision during minimally invasive surgery.

17.    STAAR operates its global administrative headquarters, primary research facility, and chief manufacturing facility in Monrovia, California.  The Monrovia Facility principally makes Collamer and IOLs, and injector systems for its IOLs. The Company also manufactures the Visian implantable Collamer lenses ("ICL") and preloaded IOL injectors at the Monrovia Facility.

18.    STAAR currently manufactures its products in four facilities worldwide.  In 2011, the Company developed and initiated a project to consolidate STAAR's global manufacturing into a single site at the Monrovia Facility, known as "Project Comet." Throughout the consolidation process, the Company has transferred parts from its global operations into a 26,000 square foot facility contiguous to the existing Monrovia Facility, which the Company leased in August 2012.

5

19.   In June 2013, the Company expanded the Monrovia Facility, substantially completing STAAR's development of preloaded ICL product, while purportedly obtaining additional regulatory approvals for its products.

20.   Also in 2013, STAAR completed transferring IOL manufacturing from Japan to the Monrovia Facility.

21.   The Company expects to complete Project Comet by the middle of 2014.

**Materially False and Misleading
Statements Issued During the Class Period**

22.   On February 27, 2013, STAAR issued a press release announcing the financial and operating results for the fourth quarter and year ended December 28, 2012. The Company reported revenue for the fourth quarter of $16.5 million compared to $16.4 million reported for the fourth quarter of 2011.

23.   The press release also updated the key developments in Project Comet, specifically noting that the Company had (i) successfully initiated manufacturing at the Monrovia Facility and shipped the first U.S. manufactured Visian ICL to customers on January 24, 2013; (ii) obtained regulatory approval for U.S. manufactured ICLs in Europe, Japan, Korea and China, representing approximately 70% of ICL unit volume; (iii) completed requirements and transferred to the Monrovia Facility cartridge manufacturing and final inspection, assembly, and pouching for Preloaded Silicone IOLs; and (iv) received commitments from several key employees from Japan and Switzerland to relocate either temporarily or permanently to the U.S.

24.     On March 12, 2013, the Company filed an annual report with the SEC on Form 10-K for the fourth quarter and year ended December 28, 2012 (the "2012 Form 10-K"), which was signed by, among others, defendants Caldwell and Andrews, and reiterated the Company's previously reported financial and operational results and position.   In addition, the 2012 Form 10-K also contained certifications pursuant to Sarbanes-Oxley Act of 2002 ("SOX") signed by defendants Caldwell and Andrews, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

25.     Moreover, the 2012 Form 10-K specifically noted that the Company "believes that it is substantially in compliance with the FDA's Quality System Regulations and Medical Device Reporting regulations."

26.     On May 1, 2013, the Company issued a press release announcing financial and operational results for the first quarter of 2013, reporting record revenue of $18.0 million compared to $15.5 million reported for the first quarter of 2012.   The press release also provided an update on the status of Project Comet, representing in relevant part:   (i) the project continues to progress on plan; (ii) the Company shipped the first U.S. manufactured ICLs during the first quarter of 2013; (iii) some Visian ICLs are now being supplied by product manufactured in Monrovia to approved markets outside the U.S; (iv) all non-sterile preloaded silicone IOLs for Japan are shipping out of the U.S;

and (v) key regulatory approval has been received to relocate the irradiator used to manufacture Collamer buttons from Aliso Viejo, California to the Monrovia Facility.

27.     On May 3, 2013, the Company filed  a quarterly report for the first quarter of 2013 on Form 10-Q with the SEC ("2013 1Q Form 10-Q"), which was signed by defendant Andrews, and reiterated the Company's previously reported financial and operational results and position.  In addition, the 2013 1Q Form 10-Q also contained SOX certifications signed by defendants Caldwell and Andrews, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

28.     The 2013 1Q Form 10-Q also noted that the Company "expects to yield significant savings in cost of goods, lower our global administrative and regulatory costs and reduce income taxes" as a result of the implementation of Project Comet.

29.     On July 31, 2013, the Company issued a press release announcing financial and operational results for the second quarter of 2013, reporting revenue of $18.2 million, which represented 14% growth compared to $15.9 million reported for the second quarter of 2012.  The press release also updated the status of Project Comet, representing in relevant part: (i) the project "continued to be basically on plan through the first half of the year,"  though the Company decided to extend the project's completion date until the first half of 2014; (ii) validations were successfully completed for the Visian Toric ICLs as expected and the Company plans to ship the first TICLs from Monrovia during the third quarter; (iii) sterile IOLs began shipping from Monrovia

8

to Japan during the quarter; and (iv) the Company exited the quarter with all IOLs globally being manufactured in Monrovia.

30.   Moreover, defendant Caldwell specifically commented on Project Comet in the press release, noting that the "manufacturing consolidation project remained basically on schedule as all IOLs and 21% of myopic ICLs through final inspection were manufactured in Monrovia during June. Throughout this three year process, supply and product quality have remained our priority."

31.   On August 6, 2013, the Company filed  a quarterly report for the second quarter of 2013 on Form 10-Q with the SEC ("2013 2Q Form 10-Q"), which was signed by defendant Andrews, and reiterated the Company's previously reported financial and operational results.   In addition, the 2013 2Q Form 10-Q also contained SOX certifications signed by defendants Caldwell and Andrews, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

32.   The 2013 2Q Form 10-Q also noted that STAAR "continues its manufacturing consolidation efforts in the second quarter of 2013", which the Company "expects to yield significant savings in cost of goods, lower our global administrative and regulatory costs and reduce income taxes."

33.   On October 30, 2013, the Company issued a press release announcing financial and operational results for the third quarter of 2013, reporting revenue of $17.1

9

million, which represented 8% growth compared to $15.9 million reported for the third quarter of 2012.  With regard to Project Comet, the Company stated, in relevant part:

> During the quarter the Company continued to make progress toward completing the manufacturing consolidation project by mid-2014.  At the end of the second quarter the Company had approximately 7,500 ICLs in finished goods inventory.  At the end of the third quarter the Company has approximately 11,400 ICLs in inventory held in both Europe and the U.S.  This represents a 50% increase of ICLs in finished goods inventory during the quarter while shipping 15% more units from stock compared to the third quarter of 2012.  This inventory build is consistent with management's plan to assure adequate supply and quality of product throughout this consolidation project.

34.    On November 1, 2013, the Company filed  a quarterly report for the third quarter of 2013 on Form 10-Q with the SEC ("2013 3Q Form 10-Q"), which was signed by defendant Brown, and reiterated the Company's previously reported financial results. In addition, the 2013 3Q Form 10-Q also contained SOX certifications signed by defendants Caldwell and Brown, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

35.    The 2013 3Q Form 10-Q also noted that STAAR "continues its manufacturing consolidation efforts in the third quarter of 2013", which the Company "expects to yield significant savings in cost of goods, lower our global administrative and regulatory costs and reduce income taxes."

36.    On February 26, 2014, the Company issued a press release announcing financial and operational results for the fourth quarter and full year 2013, reporting

10

revenue of $18.9 million for the quarter, a 15% increase over $16.5 million reported for the fourth quarter of 2012.   With regard to Project Comet, the Company stated, in relevant part:

> During the quarter, the Company continued to make progress toward completing the manufacturing consolidation project by mid-2014.  At the end of the fourth quarter the Company had approximately 17,100 ICLs in finished goods inventory, compared to approximately 11,400 ICLs in inventory held in both Europe and the U.S. at the end of the third quarter.  This represents a 50% increase of ICLs in finished goods inventory during the quarter while shipping 29% more units from stock compared to the fourth quarter of 2012.  This inventory build is consistent with management's plan to assure adequate supply and quality of product throughout this consolidation project.  Manufacturing yields of the ICL in the U.S. continue to increase.   The Company will officially close its manufacturing capabilities in Switzerland in June 2014, and expects to add headcount in U.S. as it transfers manufacturing from Switzerland.

37.   On March 12, 2014, the Company filed an annual report with the SEC on Form 10-K for the fourth quarter and year ended December 28, 2013 (the "2013 Form 10-K"), which was signed by, among others, defendants Caldwell and Brown, and reiterated the Company's previously reported financial and operational results.   In addition, the 2013 Form 10-K also contained SOX certifications signed by defendants Caldwell and Brown, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

38.   Moreover, the 2013 Form 10-K specifically noted that the Company "believes that it is substantially in compliance with the FDA's Quality System Regulations and Medical Device Reporting regulations."

11

39.    On April 28, 2014, the Company issued a press release announcing financial and operational results for the first quarter of 2014, reporting revenue of $20.2 million, a 12% increase over $18.0 million reported for the first quarter of 2013.  The press release also stated STAAR "continued to make progress toward completing the manufacturing consolidation project by mid-2014", representing in relevant part that: (i) the quarter's inventory buildup was consistent with management's plan to assure adequate supply and quality of product throughout the consolidation project process and to prepare for the potential U.S. launch for the TICL; (ii) manufacturing yields of the ICL and TICL in the U.S. continued to improve during the quarter; and (iii) the Company will officially close its manufacturing capabilities in Switzerland in June 2014.

40.    On May 13, 2014, the Company filed  a quarterly report for the first quarter of 2014 on Form 10-Q with the SEC ("2014 1Q Form 10-Q"), which was signed by defendant Brown, and reiterated the Company's previously reported financial and operational results.   In addition, the 2014 1Q Form 10-Q also contained SOX certifications signed by defendants Caldwell and Brown, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

41.    The 2014 1Q Form 10-Q also noted that the "consolidation efforts are proceeding according to plans and we expect this to continue through completion in the middle of 2014."

12

42.     The statements referenced above in paragraphs 22–41 were materially false and/or misleading because they misrepresented and failed to disclose that the Company's Monrovia Facility:  (i) lacked adequate methodologies and facilities for the manufacture, packing, storage and installation of the Company's implantable lenses; (ii) lacked adequate procedures for documenting complaints, sterility testing, and maintaining required records; and (iii) as a result of the foregoing, the Monrovia Facility was not in conformity with current good manufacturing practice requirements at all relevant times.

## The Truth Begins to Emerge

43.     On June 30, 2014, the FDA publicly released a Warning Letter, dated May 21, 2014, concerning an inspection of STAAR's Monrovia Facility that took place from February 10, 2014 to March 21, 2014.   The FDA letter noted several regulatory violations at the Monrovia Facility, resulting in "adultered" lenses.

44.     Specifically, the FDA Warning Letter stated that the Monrovia Facility lacks adequate "methods used in, or the facilities or controls used for" manufacture, packing, storage or installation of the Company's implantable lenses, such as the Visian ICL and Collamer IOL.

45.     Moreover, the Warning letter noted the Monrovia Facility had failed to (i) establish procedures for receiving, reviewing, and evaluating complaints by a formally designated unit, in violation of FDA regulations; and (ii) establish and maintain a "Design History File" for each type of device to demonstrate that the design was developed in accordance with the approved design plan, as required by the FDA.

13

46.    As a result of the foregoing, the Warning Letter concluded that the Monrovia Facility was "not in conformity with [] current good manufacturing practice requirements" . The FDA further advised STAAR that "failure to promptly correct these violations may result in regulatory action being initiated by the FDA without further notice."

47.    These adverse facts caused the value of STAAR shares to decline $1.89 or nearly 11.25%, to close at $14.91 on July 1, 2014.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

48.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired STAAR securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

49.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, STAAR securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and

other members of the Class may be identified from records maintained by STAAR or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

50.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

51.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

52.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of STAAR;

- whether the Individual Defendants caused STAAR to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of STAAR securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein;

15

and,

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

53.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

54.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- STAAR securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold STAAR securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

55.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

56.    Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## FIRST CLAIM

### Violation of Section 10(b) of
### The Exchange Act and Rule 10b-5
### Against All Defendants

57.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

58.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase STAAR securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

17

59.    Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for STAAR securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

60.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of STAAR as specified herein.

61.    These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of STAAR's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about STAAR and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and

engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of STAAR securities during the Class Period.

62.     Caldwell's, Andrews', and Brown's primary liability, and controlling person liability, arises from the following facts: (1) Caldwell, Andrews, and Brown were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) Caldwell, Andrews, and Brown, by virtue of their responsibilities and activities as  senior officers and/or directors of the Company, were privy to and participated in the creation, development and reporting of the Company's financial condition; (3) Caldwell, Andrews, and Brown enjoyed significant personal contact and familiarity with the other Defendants and were advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) Caldwell, Andrews, and Brown were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

63.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing STAAR's true operating condition at the Monrovia Facility and future business prospects from the

investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' misstatements and omissions regarding the Company's operational condition at the Monrovia Facility throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

64.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of STAAR securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of STAAR's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired STAAR securities during the Class Period at artificially high prices and were or will be damaged thereby.

65.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding STAAR's true operational condition, which was not disclosed by Defendants,

20

Plaintiff and other members of the Class would not have purchased or otherwise acquired their STAAR's securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

66.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

67.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

68.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CLAIM

### Violation of Section 20(a) of
### The Exchange Act Against The Individual Defendants

69.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

70.     Caldwell, Andrews, and Brown acted as controlling persons of STAAR within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Caldwell, Andrews, and Brown had the power to influence and control,

21

and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. Caldwell, Andrews, and Brown were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

71.    In particular, Caldwell, Andrews, and Brown had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

72.    As set forth above, STAAR, Caldwell, Andrews, and Brown each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

73.    By virtue of their positions as controlling persons, Caldwell, Andrews, and Brown are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

74.    This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

a)       Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

b)       Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c)       Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d)       Such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.

Dated: July 8, 2014                                **GLANCY BINKOW & GOLDBERG LLP**

By:  *s/ Lionel Z. Glancy*
Lionel Z. Glancy
Michael Goldberg
Robert V. Prongay
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
Email:  info@glancylaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
Francis P. McConville
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile:  212-661-8665

23

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Counsel for Plaintiff Edward Todd*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1. I, _EDWARD TODD_ , make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against STAAR Surgical Company ("STAAR" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire STAAR securities at the direction of plaintiffs counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired STAAR securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in STAAR securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8. I declare under penalty of perjury that the foregoing is true and correct.

Executed     7 - 7 - 14
              **(Date)**

 

**(Signature)**

EDWARD "TED" TODD
**(Type or Print Name)**

**STAAR Surgical Company (STAA)**                                          **Todd, Edward**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 4/23/2014 | PUR | 200 | $19.3220 |

todd