DAN MARMALEFSKY (CA SBN 95477)
dmarmalefsky@mofo.com
KAI S. BARTOLOMEO (CA SBN 264033)
KBartolomeo@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California  90017-3543
Telephone: 213.892.5200
Facsimile: 213.892.5454

Attorneys for Defendant
STAAR SURGICAL COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| EDWARD TODD, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>STAAR SURGICAL COMPANY, BARRY G. CALDWELL, and JOHN SANTOS,<br><br>Defendants. | Case No. 2:14-cv-05263-MWF (RZx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF DEFENDANT STAAR SURGICAL COMPANY'S APPLICATION FOR SEALING OF AMENDED COMPLAINT**<br><br>Hon. Michael W. Fitzgerald<br>Ctrm:  1600 |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................1

II. BACKGROUND ....................................................................................................2

    A. STAAR's Legal Counsel, K&S, Hires Consultants to Help With its Representation of STAAR ..............................................2

    B. The Amended Complaint Relies Heavily on Information Purportedly Obtained from Confidential Witness 1 .............................4

III. THE COURT SHOULD SEAL THE AMENDED COMPLAINT AS IT RELIES LARGELY ON PRIVILEGED INFORMATION ................4

    A. The Attorney-Client Privilege........................................................................4

    B. Legal Standards for Sealing Judicial Records Mandate the Sealing of the Amended Complaint ........................................................5

        1. There is no right of public access to attorney-client communications and work product ..............................................5

        2. Even if a balancing test were applied, attorney-client communications and work product outweigh any presumption of public access.........................................................6

    C. The Amended Complaint Contains STAAR's Attorney-Client-Privileged Information ...............................................................8

    D. At Minimum, the Court Should Seal the Amended Complaint Pending Further Proceedings on Privilege.......................10

IV. THE COURT SHOULD BAR ANY CONTACT BY PLAINTIFF OR HIS REPRESENTATIVES WITH CW 1 ........................10

V. CONCLUSION .....................................................................................................13

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Bobele v. Super. Ct.*,
199 Cal. App. 3d 708 (1988) .................................................................................. 13

*Campbell Indus. v. M/V Gemini*,
619 F.2d 24 (9th Cir. 1980) ..................................................................................... 12

*Cargill Inc. v. Budine*,
No. CV-F-07-349-LFO-SMS, 2007 U.S. Dist. LEXIS 48405
(E.D. Cal. June 22, 2007) .......................................................................................... 2

*Clavo v. Zarrabian*,
No. SA-CV-03-0864 CJC-RCx, 2003 U.S. Dist. LEXIS 27010
(C.D. Cal. Sept. 24, 2003) ......................................................................................... 8

*Cont'l Ins. Co. v. Super. Ct.*,
32 Cal. App. 4th 94 (1995) ...................................................................................... 13

*Crystal Grower's Corp. v. Dobbins*,
616 F.2d 458 (10th Cir. 1980) .................................................................................. 7

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
331 F.3d 1122 (9th Cir. 2003) ............................................................................. 5, 6

*G-I Holdings, Inc. v. Baron & Budd*,
199 F.R.D. 529 (S.D.N.Y. 2001) ........................................................................... 13

*Hanson v. Wells Fargo Home Mortg.*,
No. C13-0939 JLR, 2013 U.S. Dist. LEXIS 149752
(W.D. Wash. Oct. 17, 2013) ..................................................................................... 7

*Hernandez v. Creative Concepts*,
No. 2:10-cv-02132-PMP-VCF, 2013 U.S. Dist. LEXIS 103773
(D. Nev. July 24, 2013) ............................................................................................. 6

*In re Data Gen.l Corp. Antitrust Litig.*,
MDL No. 369-MHP, 1986 U.S. Dist. LEXIS 21923
(N.D. Cal. Aug. 1, 1986) ......................................................................................... 13

*Kamakana v. City & Cnty. of Honolulu*,
447 F.3d 1172 (9th Cir. 2006) .................................................................................. 6

*Kane v. Chobani, Inc.*,
No. 12-cv-02425-LHK, 2013 U.S. Dist. LEXIS 109900
(N.D. Cal. Aug. 2, 2013) ......................................................................................... 12

*Konig v. Dal Cerro*,
No. C-04-02210-MJJ, 2009 U.S. Dist. LEXIS 23729
(N.D. Cal. Mar. 11, 2009) ......................................................................................... 7

*Lambright v. Ryan*,
698 F.3d 808 (9th Cir. 2012) .................................................................................... 6

*Nalian Truck Lines, Inc. v. Nakano Warehouse & Transp. Corp.*,
  6 Cal. App. 4th 1256 (1992) .................................................................................13

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Sharp Plumbing, Inc.*,
  No. 2:09-cv-00783-GMN-GWF, 2013 U.S. Dist. LEXIS 20110
  (D. Nev. Feb. 13, 2013) .......................................................................................7

*Penn Mut. Life Ins. Co. v. Berck*,
  No. DKC 09-0578, 2010 U.S. Dist. LEXIS 95810
  (D. Md. Sept. 14, 2010) .....................................................................................10

*Powers v. Braun*,
  No. ELH-13-01622, 2013 U.S. Dist. LEXIS 175767
  (D. Md. Dec. 16, 2013) ........................................................................................7

*Publicker Indus., Inc. v. Cohen*,
  733 F.2d 1059 (3d Cir. 1984) ...............................................................................7

*Rapkin v. Rocque*,
  87 F. Supp. 2d 140 (D. Conn. 2000) ....................................................................7

*Rentclub, Inc. v. Transamerica Rental Fin. Corp.*,
  811 F. Supp. 651 (M.D. Fla. 1992) ....................................................................13

*Segerstrom v. United States*,
  No. C00-0833-SI, 2001 U.S. Dist. LEXIS 2949
  (N.D. Cal. Feb. 6, 2001) ......................................................................................9

*Shandralina G. v. Homonchuk*,
  147 Cal. App. 4th 395 (2007) ...............................................................................2

*Siedle v. Putnam Invs., Inc.*,
  147 F.3d 7 (1st Cir. 1998) ............................................................................6, 10

*Specialty Surplus Ins. Co. v. Lexington Ins. Co.*,
  No. C06-5246 RJB, 2007 U.S. Dist. LEXIS 60623
  (W.D. Wash. Aug. 17, 2007) ................................................................................7

*Swidler & Berlin v. United States*,
  524 U.S. 399 (1998) ..............................................................................................5

*United States v. Chen*,
  99 F.3d 1495 (9th Cir. 1996) ...............................................................................4

*United States v. Judson*,
  322 F.2d 460 (9th Cir. 1963) ...............................................................................8

*United States v. Kovel*,
  296 F.2d 918 (2d Cir. 1961) ................................................................................9

*United States v. Nobles*,
  422 U.S. 225 (1975) ..............................................................................................9

*United States v. Richey*,
  632 F.3d 559 (9th Cir. 2011) ...............................................................................8

*United States v. Zolin*,
  491 U.S. 554 (1989)..........................................................................................4

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981)..........................................................................................4

*Van Asdale v. Int'l Game Tech.*,
  No. 3:04-CV-703-RAM, 2010 U.S. Dist. LEXIS 60766
  (D. Nev. May 28, 2010)....................................................................................7

*Wharton v. Calderon*,
  127 F.3d 1201 (9th Cir. 1997) ...................................................................11, 12

**Statutes**

Cal. Evid. Code § 952..............................................................................................9

**Other Authorities**

Cal. Rules Prof. Conduct R. 3-100A, Discussion Note 2.........................................1

Civ. L.R. 83-3.1.2 ....................................................................................................1

## I. INTRODUCTION

On October 24, 2014, the Court granted the *ex parte* application of Defendants STAAR Surgical Company ("STAAR"), Barry Caldwell, and John Santos (collectively "Defendants"), temporarily sealing Plaintiff's Amended Complaint and ordering the parties to refrain from contacting the individual identified as "Confidential Witness 1" ("CW 1") in the Amended Complaint. For the reasons set forth herein and in the *ex parte* application, the Court should seal the Amended Complaint and enjoin Plaintiff and his counsel and other representatives from future contact with CW 1.[1] At minimum, the Court should so order pending determination whether privilege was violated and appropriate remedies.

STAAR respectfully suggests that the Court should direct Plaintiff to advise whether he disputes that the work performed by CW 1 was covered by attorney-client privilege and work product protection. If he does, then Plaintiff should be directed to set forth the basis for that contention. If Plaintiff agrees that CW 1 was prohibited from disclosing the information he obtained while subject to those privileges, then the Court should set a schedule to determine the appropriate remedy. At such time, STAAR intends to argue that Plaintiff's receipt and use of information protected by attorney-client privilege and work product protection mandates disqualification of both plaintiff and his counsel.[2]

---

[1] George Calafactor is Confidential Witness 1. For convenience STAAR refers in this pleading to "Confidential Witness 1" or "CW 1"; the contemporaneous emails attached to the declarations submitted concurrently with this Memorandum of course are addressed to Mr. Calafactor, not "CW 1."

[2] The California Rules of Professional Responsibility apply to attorneys practicing before this Court. Civ. L.R. 83-3.1.2. Those rules make clear that the communications at issue here are privileged. Cal. Rules Prof. Conduct R. 3-100A, Discussion Note 2 ("The principle of client-lawyer confidentiality applies to information relating to the representation, whatever its source, and encompasses matters communicated in confidence by the client, and therefore protected by the attorney-client privilege, matters protected by the work product doctrine, and matters protected under ethical standards of confidentiality, all as established in law, rule and policy.") Under those rules, when an opposing attorney obtains

(Footnote continues on next page.)

STAAR's MPA ISO App. to Seal 1
la- 1268244

## II. BACKGROUND

### A. STAAR's Legal Counsel, K&S, Hires Consultants to Help With its Representation of STAAR

On July 1, 2014, the United States Food & Drug Administration ("FDA") released on its website a warning letter (the "FDA Warning Letter") it had issued to STAAR that alleged various regulatory violations. STAAR's stock price declined and Plaintiff commenced this action shortly thereafter.

In connection with the FDA Warning Letter, STAAR hired King & Spalding ("K&S"), a well-respected international law firm, to serve as outside legal counsel. (Decl. of Elaine Tseng ("Tseng Decl.") in Support of Ex Parte (ECF. No. 28-2) ¶ 2.) K&S engaged outside consultants, including the consulting firm ProPharma Group ("ProPharma"), to assist K&S in its representation. (*Id.*)

The work performed by these outside consultants was for the express purpose of providing information and analysis to K&S that K&S would, in turn, use to provide legal advice and services to STAAR. (*Id.* ¶ 2, Ex. A.) Indeed, K&S's engagement letter with ProPharma, dated July 25, 2014, made clear that all work performed by ProPharma (described in the agreement as "Independent Consultant") to assist K&S in its work for STAAR is protected by attorney-client privilege and the work product doctrine. The letter stated in relevant part that:

---

(Footnote continued from previous page.)

confidential information protected by the work product privilege, he "can be disqualified because, having become privy to the attorney's work product, there is no way the offending attorney could separate that knowledge from his or her preparation of the case." *Shandralina G. v. Homonchuk*, 147 Cal. App. 4th 395, 407 (2007) (internal citations omitted). *See also Cargill Inc. v. Budine*, No. CV-F-07-349-LFO-SMS, 2007 U.S. Dist. LEXIS 48405 (E.D. Cal. June 22, 2007). Furthermore, Plaintiff's counsel certainly should have known that talking to CW 1 violated attorney-client privileges given the timing and circumstances of his services in connection with the FDA Warning Letter and the high likelihood that outside counsel had engaged ProPharma. STAAR is prepared to demonstrate at such time as the Court directs that receipt by Plaintiff and his counsel of privileged and protected information from CW 1 mandates disqualification.

STAAR's MPA ISO App. to Seal
la- 1268244

2

> All communications in connection with this assignment ... *shall be regarded as confidential* and made solely for the purpose of assisting King & Spalding, or other such lawyer, *in providing legal advice.* . . . Furthermore, *all communications* between the Independent Consultant, the client, and King & Spalding in this matter *are confidential and are privileged under the attorney-client privilege and the work product doctrine*. . . . Independent Consultant will not disclose to any person or entity, including any federal or state agency, any privileged or confidential information, lawyer's work product, opinions, facts, or data thus disclosed unless such disclosure has been previously authorized, in writing, by the law firm.

(*See id.* (emphasis supplied).)

ProPharma hired CW 1 to assist with its work for K&S. (Declaration of Joe Biehl in Support of Application ("Biehl Decl.") ¶ 2.) On August 7, 2014, prior to CW 1 commencing work at STAAR's facilities, ProPharma Associate Director Steve Speer advised CW 1 in writing that ProPharma had been retained by STAAR's legal counsel, K&S, and that because of the privileged nature of the work, he was subject to restrictions on any communications regarding any work he performed. (Declaration of Steve Speer in Support of Application ("Speer Decl.") ¶ 3.) In fact, Mr. Speer included in an email to CW 1 the exact excerpts from ProPharma's contract with K&S quoted above, including that "*all communications* between the Independent Consultant, the client, and King & Spalding in this matter *are confidential and are privileged under the attorney-client privilege and the work product doctrine*." (*Id.* ¶ 4, Ex. A (emphasis added).)

Two weeks later, when CW 1's work on the K&S engagement ended, on August 22, 2014 ProPharma Vice-President Joe Biehl reminded CW 1 both orally and in writing of the confidentiality restrictions and that he was not allowed to retain any materials from his work at STAAR on the K&S engagement. (Biehl Decl. ¶¶ 4-5, Ex. B.) CW 1 confirmed to Mr. Biehl that he understood his

confidentiality obligations and that he had destroyed any materials in his possession concerning that work. (Biehl Decl. ¶ 4, 5, Ex. B.) ProPharma did not authorize CW 1 to make any disclosure to anyone concerning work he performed under the engagement between K&S and ProPharma. (Biehl Decl. ¶7; Speer Decl. ¶ 5.)

After CW 1's work on the K&S engagement ended in August 2014, on September 8, 2014 Plaintiff moved to be appointed as Lead Plaintiff. On September 29, 2014, the Court appointed Lead Plaintiff and approved his selection of counsel.

### B. The Amended Complaint Relies Heavily on Information Purportedly Obtained from Confidential Witness 1

CW 1 is referenced in and/or listed as the source for Plaintiff's substantive allegations in no fewer than *twenty-six paragraphs* in the Amended Complaint, which describe in detail the work done by ProPharma at STAAR and communications between CW 1 and persons at STAAR and ProPharma concerning that work. (*See* Am. Compl. ¶¶ 13, 32, 111, 112, 114, 115, 116, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 176, 180.) Numerous other allegations in the Amended Complaint appear to have been derived from information improperly disclosed by CW 1.

## III. THE COURT SHOULD SEAL THE AMENDED COMPLAINT AS IT RELIES LARGELY ON PRIVILEGED INFORMATION

### A. The Attorney-Client Privilege

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *see also United States v. Zolin*, 491 U.S. 554, 562 (1989). It protects "confidential disclosures made by a client to an attorney in order to obtain legal advice, . . . as well as an attorney's advice in response to such disclosures." *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996). The purpose of the privilege "is to encourage full and frank communication between attorneys and

their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn*, 449 U.S. at 389; *see also Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998). The privilege is essential to a party's ability to obtain useful legal advice and "to guide them through thickets of complex government requirements." *Chen*, 99 F.3d at 1499.

### B. Legal Standards for Sealing Judicial Records Mandate the Sealing of the Amended Complaint

#### 1. There is no right of public access to attorney-client communications and work product

Although there is a presumption of public access to court records, this "common law right of access . . . is not absolute." *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). Importantly, an exception to *any* presumption of access exists for those categories of documents that "have 'traditionally been kept secret for important policy reasons'." *Id.* at 1134 (citation omitted). Among the documents "traditionally protected from disclosure" are attorney client communications and work product:

> two protective orders entered during discovery apply in whole or part to documents eventually filed with the court. The first protects evidence produced by State Farm in the course of pursuing its motion to disqualify the law firm representing the plaintiff. We do not upset this ruling. It deals with the very narrow issue of whether plaintiff's counsel should be disqualified. We accept the proposition that State Farm, to present this issue, would be required to produce ***attorney-client communications and possibly work product that are traditionally protected from disclosure***.

*Id.* at 1138 (emphasis supplied).

Subsequent to *Foltz*, the Ninth Circuit and district courts in this circuit have repeatedly recognized that there is no right of access to materials that have traditionally been kept secret. As the Ninth Circuit has indicated:

> In *Foltz* we explained that materials that are sealed during discovery presumptively may not remain sealed once they are filed with the court for public policy reasons unless the materials in questions are of a type that "have traditionally been kept secret for important policy reasons." 331 F.3d at 1134 (internal quotation marks and citation omitted). ***Attorney-client privileged materials, of course, are archetypical examples of material that has traditionally been kept secret for important policy reasons***.

*Lambright v. Ryan*, 698 F.3d 808, 820 (9th Cir. 2012) (emphasis supplied); *see also Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1185 (9th Cir. 2006) ("'there is no right of access to documents which have traditionally been kept secret for important policy reasons'... meaning that a party need not show 'compelling reasons' to keep such records sealed."); *Hernandez v. Creative Concepts*, No. 2:10-cv-02132-PMP-VCF, 2013 U.S. Dist. LEXIS 103773 (D. Nev. July 24, 2013) (same).

### 2. Even if a balancing test were applied, attorney-client communications and work product outweigh any presumption of public access

For documents that have not traditionally been kept secret, there is a presumption of access to judicial records. However, that rebuttable presumption may be overcome by showing "compelling reasons" that outweigh "the public polices favoring disclosure." *See, e.g.*, *Kamakana*, 447 F.3d at 1178-79. As multiple courts have found, the attorney-client privilege and the work-product-doctrine unquestionably present "compelling reasons" justifying a motion to seal. *See, e.g.*, *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 11 (1st Cir. 1998) ("the interest in preserving a durable barrier against disclosure of privileged attorney-client information is . . . of considerable magnitude. Indeed, this is precisely the kind of countervailing concern that is capable of overriding the general preference for public access to judicial records."); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059,

1073 (3d Cir. 1984) (to ensure the benefit of the privilege, a court may enjoin the disclosure of information "arguably within the attorney-client privilege" "to preserve secrecy while it deliberated on the question of confidentiality."); *Crystal Grower's Corp. v. Dobbins*, 616 F.2d 458, 461-62 (10th Cir. 1980) (interest in preserving the attorney-client privilege outweighs the public's more general interest in access to court documents: "disclosure of the contents of communications between [plaintiffs] and their attorneys and of reports prepared by their attorneys would effectively nullify their claim of privilege without a hearing on the merits."); *Hanson v. Wells Fargo Home Mortg.*, No. C13-0939 JLR, 2013 U.S. Dist. LEXIS 149752 (W.D. Wash. Oct. 17, 2013) (attorney-client privilege and the work-product-doctrine present compelling reasons justifying a motion to seal.); *Powers v. Braun*, No. ELH-13-01622, 2013 U.S. Dist. LEXIS 175767 (D. Md. Dec. 16, 2013) (privilege claim capable of overriding presumption of access); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Sharp Plumbing, Inc.*, No. 2:09-cv-00783-GMN-GWF, 2013 U.S. Dist. LEXIS 20110 (D. Nev. Feb. 13, 2013) (protection of the attorney-client privilege and the work-product doctrine outweighs the public interest in accessing the courts and constitutes a compelling need); *Van Asdale v. Int'l Game Tech.*, No. 3:04-CV-703-RAM, 2010 U.S. Dist. LEXIS 60766, at *9 (D. Nev. May 28, 2010) ("public interest in accessing the courts does not outweigh the . . . compelling need to honor the attorney-client privilege and the work-product doctrine."); *Konig v. Dal Cerro*, No. C-04-02210-MJJ, 2009 U.S. Dist. LEXIS 23729 (N.D. Cal. Mar. 11, 2009) (compelling reasons justify sealing of attorney work product); *Specialty Surplus Ins. Co. v. Lexington Ins. Co.*, No. C06-5246 RJB, 2007 U.S. Dist. LEXIS 60623, at *47 (W.D. Wash. Aug. 17, 2007) ("public interest in accessing the courts does not outweigh the compelling need to honor the attorney-client privilege."); *Rapkin v. Rocque*, 87 F. Supp. 2d 140, 143 (D. Conn. 2000) ("the public interest in preserving the attorney-client privilege ordinarily outweighs the presumption of access to judicial documents. If it did not, all that

1 would be necessary in any dispute over whether a matter was protected by the
2 attorney-client privilege would be to find a media outlet that stated it wanted the
3 matter revealed in order to make it available to its audience.").

          **C.**    **The Amended Complaint Contains STAAR's Attorney-Client-Privileged Information**

6       As the above facts make clear, the Amended Complaint contains, and relies
7 heavily on, STAAR's privileged information – information CW 1 learned in the
8 course of ProPharma's engagement by STAAR's outside counsel and later
9 improperly disclosed to Plaintiff and/or his attorneys. CW 1 was not authorized by
10 STAAR or K&S to disclose the information. Indeed, he was reminded in writing of
11 his obligation to refrain from doing so. CW 1 is not allowed to hijack STAAR's
12 attorney-client privilege, nor is Plaintiff permitted to benefit from CW 1's improper
13 conduct. STAAR respectfully submits that sealing the Amended Complaint is the
14 minimum prophylactic remedy needed to prevent the substantial prejudice STAAR
15 will suffer from the unauthorized disclosure of its privileged information.

16       The fact that CW 1 worked directly for ProPharma, the outside consultant
17 engaged by K&S, rather than for K&S, does not change the privileged nature of the
18 information gathered during his time at STAAR. K&S retained ProPharma to assist
19 K&S in rendering legal advice in the technically complex area covered by FDA
20 regulations. It is well established that "[t]he attorney-client privilege also extends
21 to confidential communications with one employed to assist the lawyer in the
22 rendition of professional legal services." *Clavo v. Zarrabian*, No. SA-CV-03-0864
23 CJC-RCx, 2003 U.S. Dist. LEXIS 27010, at *5 (C.D. Cal. Sept. 24, 2003)
24 (consultant hired by outside counsel to assist counsel in giving legal advice on
25 ADA compliance); *see also United States v. Richey*, 632 F.3d 559, 566 (9th Cir.
26 2011) ("The attorney-client privilege may extend to communications with third
27 parties who have been engaged to assist the attorney in providing legal advice.");
28 *United States v. Judson*, 322 F.2d 460, 462 (9th Cir. 1963) (attorney-client privilege

STAAR's MPA ISO App. to Seal       8
la- 1268244

applied to documents prepared by accountant whose "role was to facilitate an accurate and complete consultation between the client and the attorney about the former's financial picture"); *United States v. Kovel,* 296 F.2d 918, 922 (2d Cir. 1961); *Segerstrom v. United States*¸ No. C00-0833-SI, 2001 U.S. Dist. LEXIS 2949, at *6 (N.D. Cal. Feb. 6, 2001) ("The privilege also covers papers prepared . . . by a third party at the attorney's request for the purpose of advising the client."). That principle is also codified in California's statutory attorney-client privilege. *See* Cal. Evid. Code § 952.

In engaging ProPharma (and those that worked for ProPharma such as CW 1), STAAR and K&S reasonably expected that all consultant work would not become public – neither to litigation adversaries nor to regulators because of privilege and work product.  As the Supreme Court has acknowledged, one of the realities of "our adversary system . . . is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial." *United States v. Nobles*, 422 U.S. 225, 238-239 (1975).  It is "therefore necessary" for attorney-client privilege and work product doctrine to protect communications between the agent and the client as well as material prepared by agents for the attorney.  *Id.*

Here, public disclosure of an Amended Complaint, derived in large part from communications improperly obtained in violation of STAAR's attorney-client privilege and the work product doctrine, would undermine those fundamental protections.  Furthermore, STARR's legal counsel hired ProPharma in furtherance of its assistance in STAAR's efforts to formulate a robust response to a regulatory citation.  Companies, such as STAAR, are entitled to rely upon attorney-client privilege when their counsel engages consultants, without the risk of unnecessary harm from disclosure by a rogue employee of that consultant.  Unsealing the Amended Complaint will cause substantial harm to STAAR and effectively punish STAAR for its efforts to prepare a comprehensive response to the FDA Warning

STAAR's MPA ISO App. to Seal         9
la- 1268244

Letter. Mitigating the misuse of information obtained in violation of attorney-client privilege and the work product doctrine overrides any common law right of access and provides a compelling reason to seal the Amended Complaint.

**D.  At Minimum, the Court Should Seal the Amended Complaint Pending Further Proceedings on Privilege**

The K&S engagement letter and the declarations from ProPharma officers constitute a prima facie showing that the attorney-client privilege and work product protection covered any information CW 1 obtained at STAAR and later disclosed to Plaintiff. As a result, all information in the Amended Complaint derived from CW 1 should remain sealed. *See Siedle*, 147 F.3d at 12:

> if the appropriate parts of the record do not remain sealed for the time being, Putnam irretrievably will lose the benefit of a privilege that, on the face of things, appears to attach. ... Putnam has made a sufficient showing that various filings contain privileged information, and without either an adjudication of the privilege question or an appropriate seal order, Putnam will lose the entire benefit of the putative privilege. We cannot countenance such a result. ... we hold that Putnam's unrebutted prima facie showing that the attorney-client privilege applies entitles it to protection.

*See also Penn Mut. Life Ins. Co. v. Berck*, No. DKC 09-0578, 2010 U.S. Dist. LEXIS 95810 (D. Md. Sept. 14, 2010) ("Without a sealing order, however, the public disclosure of ostensibly privileged information completely extinguishes any claim to the privilege 'without a hearing on the merits'", *citing Crystal Grower's Corp.,* 616 F.2d at 462).

**IV.  THE COURT SHOULD BAR ANY CONTACT BY PLAINTIFF OR HIS REPRESENTATIVES WITH CW 1**

CW 1's only knowledge of STAAR stems from his work on K&S's engagement of ProPharma. While working at STAAR on the K&S engagement, CW 1 participated in conversations and had access to information that a client

would be expected to share in a privileged setting. The only relevant information CW 1 could provide is privileged — any further effort to obtain information from CW 1 would be unethical and the Court should expressly prevent such conduct. An attorney for a plaintiff certainly cannot question a former associate employed by the law firm representing the defendant about what he learned while engaged by that defendant. The same is true for a former employee of a consultant employed in a privileged setting by a consultant for defendant's counsel.

The Court indicated that it questions whether it has the authority to bar such contact in light of *Wharton v. Calderon*, 127 F.3d 1201 (9th Cir. 1997). *Wharton* does not limit the Court's authority to prevent such contact. The circumstances presented in *Wharton* differ materially from those at issue here. In *Wharton*, a prisoner brought a habeas petition to challenge his first-degree murder conviction by arguing ineffective assistance of counsel. While the district court recognized that the filing of a habeas petition alleging ineffective assistance of counsel ordinarily waives privilege, because it was theoretically possible that some communications might still be privileged, it issued a protective order directing the defendant not to have *ex parte* contact with Wharton's former counsel. The Ninth Circuit held that the district court exceeded its authority, noting

> the brunt of the district court's ethical regulation falls on attorneys who are not before the court, *i.e.,* Wharton's former state court attorneys. Even assuming those attorneys have a continuing ethical obligation to Wharton not to disclose unwaived, privileged communications, [the case cited by Wharton] does not authorize the district court to reach out and "regulate" attorneys not appearing before it.

*Id.* at 1206. In addition, the Ninth Circuit noted the absence of any prejudice to Wharton from permitting the *ex parte* contacts. *Id.* at 1205.

In this case, the attorneys are before the Court, and the Court therefore has

STAAR's MPA ISO App. to Seal   11
la- 1268244

the authority to require that they comply with the Rules of Professional Responsibility that render unethical any effort to obtain privileged information from CW 1.  Whereas Wharton had already been convicted and sentenced to death, and thus was unlikely to suffer prejudice in advance of a trial court determination of the admissibility of evidence, disclosure of confidential, privileged information obtained in the course of K&S assisting STAAR in a regulatory matter could obviously prejudice STAAR both in this matter and in the underlying regulatory proceeding.  Nor is the Ninth Circuit recognition that assertion of ineffective assistance of counsel ordinarily waives privilege relevant here.

K&S and STAAR are the holders of the privileges at issue; only they are authorized to waive privilege.  *Wharton* does not restrict this Court from issuing an order limiting Plaintiff's contact with a non-lawyer third party consultant who may not appreciate that Plaintiff and his agents are not permitted to invade those privileges.

Rather, the Court has the authority to issue such an order through its "inherent power to protect the integrity of the adversary process, protect privileges, and promote public confidence in the legal system." *Kane v. Chobani, Inc.*, No. 12-cv-02425-LHK, 2013 U.S. Dist. LEXIS 109900, at *16 (N.D. Cal. Aug. 2, 2013); *see also Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980).  *Kane* is directly on point.  In *Kane,* the court ordered the plaintiff's lawyer to refrain from seeking information from a third-party consultant he knew had been retained by opposing counsel.  The court held that further attempts at contacting that consultant would "continue to risk compromising the integrity of the adversary process, the protection of privileges, and the promotion of public confidence in the legal system." *Kane*, 2013 U.S. Dist. LEXIS 109900, at *21.

Courts have similarly prohibited contact with a party's former employees who were "privy to matters protected by the attorney-client or work-product privilege." *In re Data Gen.l Corp. Antitrust Litig.*, MDL No. 369-MHP, 1986 U.S.

1  Dist. LEXIS 21923, at *4-5 (N.D. Cal. Aug. 1, 1986); *G-I Holdings, Inc. v. Baron*
2  *& Budd*, 199 F.R.D. 529, 534 (S.D.N.Y. 2001) (issuing protective order to prevent
3  *ex parte* contact with certain of defendants' former employees to prevent disclosure
4  of privileged information); *Rentclub, Inc. v. Transamerica Rental Fin. Corp.*, 811
5  F. Supp. 651, 657 (M.D. Fla. 1992) ("Privileged communications present a distinct
6  problem with respect to contact with former employees, thus ex parte contact
7  should be barred to prevent disclosure of any inadvertent confidential
8  communications.").[3]

CW 1 possesses confidential information that STAAR and K&S reasonably expected would be kept confidential under attorney-client privilege and the work product doctrine. An order directing Plaintiff, his counsel and other agents to refrain from any contact with CW1 is necessary to safeguard the integrity of the adversary process and prevent further unauthorized access to confidential materials.[4]

## V.  CONCLUSION

For the foregoing reasons, the Court's Order sealing the Amended Complaint should remain in effect, as should the Court's Order barring plaintiff or his agents from any communication with CW 1.

The Court should further direct Plaintiff to advise whether he disputes that

---

[3] Although California ethics rules do not prohibit counsel from contacting an opposing party's former employees, California courts have recognized that such protective orders are nonetheless appropriate to prevent disclosure of privileged information. *See, e.g.*, *Cont'l Ins. Co. v. Super. Ct.*, 32 Cal. App. 4th 94, 119 (1995); *Nalian Truck Lines, Inc. v. Nakano Warehouse & Transp. Corp.*, 6 Cal. App. 4th 1256, 1264 (1992); *Bobele v. Super. Ct.*, 199 Cal. App. 3d 708, 712–714 (1988).

[4] The Court also ordered that STAAR not have contact with CW 1. That aspect of the Court's Order should be removed, as there is no reason to prevent STAAR from affirmatively taking further steps to ensure that its confidential information is protected.

1  CW 1 was prohibited from disclosing information he learned while working on the
2  K&S engagement, and if so, the basis for that contention.

Dated: November 3, 2014

DAN MARMALEFSKY
KAI S. BARTOLOMEO
MORRISON & FOERSTER LLP

By: /s/ *Dan Marmalefsky*
Dan Marmalefsky

Attorneys for Defendant
STAAR SURGICAL COMPANY