**POMERANTZ LLP**
Marc I. Gross
Jeremy A. Lieberman
Michael J. Wernke
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile:  (212) 661-8665
Email: migross@pomlaw.com
          jalieberman@pomlaw.com
          mjwernke@pomlaw.com

*Lead Counsel for Plaintiffs*

Lionel Z. Glancy (#134180)
Michael Goldberg (#188669)
Robert V. Prongay (#270796)
**GLANCY BINKOW & GOLDBERG LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
E-mail: info@glancylaw.com

*Liaison Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD TODD, Individually and on Behalf of All Others Similarly Situated, | Case No. 14-CV-05263-MWF-RZ |
| | **CLASS ACTION** |
| Plaintiff, | |
| | **PLAINTIFF'S RESPONSE TO DEFENDANT STAAR SURGICAL COMPANY'S APPLICATION TO SEAL THE AMENDED COMPLAINT** |
| vs. | |
| STAAR SURGICAL COMPANY, BARRY G. CALDWELL, and JOHN SANTOS | |
| Defendants. | |

PLAINTIFF'S RESPONSE TO STAAR'S APPLICATION TO SEAL AMENDED COMPLAINT
CASE NO. 14-CV-05263-MWF-RZ

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................... 1

RELEVANT FACTS ...................................................................................... 2

ARGUMENT ................................................................................................. 5

    I.     The Existence of a Confidentiality Agreement Does Not Warrant
            Sealing the Complaint ................................................................. 5

    II.    The Complaint Does Not Contain Any Communications Protected By
            the Attorney-Client Privilege or Work Product Doctrine ............................ 6

         a.     STAAR Has Failed to Carry Its Burden of Identifying The
                 Allegedly Privileged Communications in the Complaint .................. 8

         b.     The Complaint Does Not Contain Any Communications
                 Protected by the Attorney-Client Privilege ....................................... 10

         c.     The Complaint Does Not Contain Any Attorney Work Product ...... 12

    III.   Plaintiff Should Not Be Barred From Contacting CW 1 ........................... 14

CONCLUSION ............................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**                                                                **Pages**

*Allied Irish Banks, p.l.c. v. Bank of America, N.A.*,
  240 F.R.D. 96 (S.D.N.Y. 2007) ..................................................................13

*Brado v. Vocera Communications, Inc.*,
  2014 WL 3752134 (N.D. Cal. Jul. 30, 2014)......................................... 1, 6

*Cargill Inc. v. Budine*,
  2007 WL 1813762  (E.D. Cal. June 22, 2007) .......................................15

*Chambers v. Capital Cities/ABC*,
  159 F.R.D. 441 (S.D.N.Y.1995) ...............................................................6

*Clarke v. Am. Commerce Nat'l Bank*,
  974 F.2d 127 (9th Cir. 1992)....................................................................7

*DeLuca v. State Fish Co.*,
  217 Cal.App. 4th 671 ..............................................................................15

*Dombrowski v. Bell Atlantic Corp.*,
  128 F. Supp. 2d 216 (E.D. Pa. 2000) ......................................................5

*Ellsworth v. Prison Health Servs., Inc.*,
  2013 WL 6587876 (D. Ariz. Dec. 12, 2013) ..........................................8

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
  331 F.3d 1122 (9th Cir. 2003)..................................................................5

*Hagestad v. Tragesser*,
  49 F.3d 1430 (9th Cir.1995).....................................................................5

*Harling v. ADO Staffing, Inc.*, No. 3:13-cv-1113-J-34JRK,
  2014 BL 149186, 10 (M.D. Fla. May 29, 2014)......................................5

*In re CV Therapeutics, Inc. Sec. Litig.*,
  2006 WL 1699536 (N.D. Cal. June 16, 2006) ......................................12

*In re Echostar Communications Corp.*,
448 F.3d 1294 (Fed. Cir. 2006)...................................................................13

*In re JDS Uniphase Corp. Sec. Litig.*,
238 F.Supp.2d 1127 (N.D. Cal. 2002) ...........................................................6

*In re Kidder Peabody Sec. Litig.*,
168 F.R.D. 459 (S.D. N.Y. 1996) .................................................................13

*In re Marvel*,
251 B.R. 869 (Bankr.N.D.Cal.2000), ...........................................................15

*Informatica Corp. v. Business Objects Data Integration, Inc.*,
454 F. Supp. 2d 957 (N.D. Cal. 2006) .........................................................12

*Jewitt v. IDT Corp.*, No. 04-1454 (JCL),
2004 BL 918, 3 (D.N.J. Aug. 06, 2004).........................................................5

*Kamakana v. City & Cnty. Of Honolulu*,
447 F.3d 1172 (9th Cir. 2006)........................................................................5

*Kane v. Chobani, Inc.*,
2013 WL 3991107 (N.D. Cal. Aug. 2, 2013) ...............................................15

*Larmanger v. Kaiser Found. Health Plan of Northwest*,
805 F. Supp. 2d 1050 (D. Or. 2011) ..............................................................9

*Lewis v. Wells Fargo*,
266 F.R.D. 433 (N.D. Cal. 2010) .................................................................14

*Marceau v. IBEW Local*,
*1269*, 246 F.R.D. 610 (D. Ariz. 2007) ........................................................14

*McCaugherty v. Siffermann*,
132 F.R.D. 234 (N.D. Cal. 1990)..................................................................11

*Philadelphia v. Westinghouse Elec. Corp.*,
205 F. Supp. 830 (D. Pa. 1962)....................................................................10

*Resolution Trust Corp. v. Dabney*,
73 F.3d 262 (10th Cir. 1995)........................................................................13

PLAINTIFF'S RESPONSE TO STAAR'S APPLICATION TO SEAL AMENDED COMPLAINT
CASE NO. 14-CV-05263-MWF-RZ                                                        iii

*Roush v. Seagate Tech.*, LLC,
   150 Cal.App. 4th 210 (2007) ................................................................. 15

*Shandralina G. v. Homonchuk*,
   147 Cal. App. 4th 395 (2007) ................................................................ 15

*Takiguchi v. MRI Int'l, Inc.,*
   2013 WL 6528507 (D. Nev. Dec. 11, 2013) ............................................ 6

*U.S. ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr.,*
   2012 WL 5415108 (M.D. Fla. Nov. 6, 2012) ......................................... 10

*U.S. v. Adlman*,
   134 F.3d 1194 (2d Cir. 1998) ................................................................ 13

*U.S. v. Adlman*,
   68 F.3d 1495 (2d Cir. 1995) ............................................................ 11, 12

*U.S v. ChevronTexaco Corp.*,
   241 F. Supp. 2d 1065 (N.D. Cal. 2002) ............................................ 11, 12

*U.S. v. Gurtner*,
   474 F.2d 297 (9th Cir. 1973) ................................................................... 7

*U.S. v. Kovel*,
   296 F.2d 918 (2d Cir. 1961) ......................................................... 2, 3, 4, 11

*U.S. v. Richey*,
   632 F.3d 559 (9th Cir. 2011) ........................................................ *passim*

*U.S. v. Ruehle*,
   583 F.3d 600 (9th Cir. 2009) ............................................................... 7, 8

*United States v. Ackert*,
   169 F.3d 136 (2d Cir.1999) .................................................................. 11

*United States v. Martin*,
   278 F.3d 988 (9th Cir. 2002) ............................................................ 8, 14

*United States v. Sakai*,
  2011 WL 2581909 (D. Haw. June 7, 2011) ....................................................8

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981) ..........................................................................1, 6, 7, 10

*Visa U.S.A. v. First Data Corp.*,
  241 F.Supp.2d 1100 (N.D.Cal.2003) ............................................................15

*Weil v. Investment/Indicators, Research and Mgmt. Inc.*,
  647 F.2d 18 (9th Cir. 1980)............................................................................7

*Wharton v. Calderon*,
  127 F.3d 120...................................................................................................14

*Wharton*,
  127 F.3d at 1206.............................................................................................15

**Rules**

Fed. R. Civ. P. 26(b)(3)(A) .................................................................................12

1
2
3
4
5

Pursuant to the Court's October 24, 2014 Order, Doc. #31, Lead Plaintiff Edward Todd ("Plaintiff") respectfully submits this memorandum in response to the application by Defendant STAAR Surgical Company ("STAAR" or the "Company") to seal the Amended Complaint ("Complaint" or "AC"), Doc. #25, and prevent any further contact with Confidential Witness #1 ("CW 1").

6

## PRELIMINARY STATEMENT

7
8
9
10
11
12
13

In response to the Court's Order instructing STAAR to prove up its claim that the Complaint should be sealed because it contains attorney-client privileged communications, STAAR fails to identify even a single privileged communication contained in the Complaint. Instead, STAAR argues that every *fact* in the Complaint attributed to CW 1 is privileged because: (1) STAAR hired legal counsel to represent the Company concerning its Warning Letter remediation efforts; and (2) CW 1 was engaged pursuant to a confidentiality agreement.  STAAR has failed to carry its burden.

14
15
16
17
18

First, it is well settled that the existence of a confidentiality agreement does not warrant sealing a complaint.  *See Brado v. Vocera Communications, Inc.*, 2014 WL 3752134, at *2 (N.D. Cal. Jul. 30, 2014) ("To hold to the contrary would severely compromise plaintiffs' ability in securities cases to meet the heightened pleading requirements of the PSLRA. . .").

19
20
21
22
23
24
25
26

Second, while courts have sealed specific paragraphs of complaints when a party has established that they convey attorney-client privileged communications, "[t]he [attorney-client] privilege only protects disclosure of *communications*; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981).  Because STAAR fails to identify a single sentence in the Complaint containing a communication with an attorney, much less for the purpose of seeking legal advice, STAAR's claim of privilege, and its request to seal the Complaint and prohibit contact with CW 1 must be rejected.

27
28

As STAAR explained to analysts following the disclosure of the Warning Letter, the Company hired numerous consultants to assist in its remediation efforts (which it was disclosing to the FDA), not to defend a lawsuit.  CW 1 was merely one of these consultants – engaged to conduct an internal audit of the Company's quality assurance controls, a routine business requirement for any company regulated by the FDA.  Neither the underlying facts that CW 1 learned in the course of that work, nor CW 1's communications with other non-lawyer employees are privileged.  *See U.S. v. Kovel*, 296 F.2d 918 (2d Cir. 1961) ("What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer. If what is sought is not legal advice but only accounting service, . . . or if the advice sought is the accountant's rather than the lawyer's, no privilege exists.").

Notably, STAAR does not assert that any facts detailing the Company's wrongful conduct provided by CW 1 are inaccurate.  Unable to identify any privileged communications, STAAR's application to seal the Complaint is revealed for what it truly is, an attempt to conceal from the public the details of its massive fraud and cover-up.

## RELEVANT FACTS

During a routine inspection of STAAR's Monrovia, California manufacturing facility between February 10, 2014 and March 21, 2014, the FDA identified numerous violations of current good manufacturing practice regulations.   AC ¶¶ 99-109.  Specifically, the FDA inspector repeatedly requested production of the Company's Design History Files, which ensure the safe and effective manufacturing of STAAR's medical devices.  AC ¶ 100.  These files were not produced because they did not exist.  AC ¶¶ 100, 130.  On March 21, 2014, the FDA set forth these and other deficiencies in a Form 483 that it provided to management.  AC ¶¶ 99-109.   STAAR did not disclose the Form 483 to investors.  On May 21, 2014, the FDA issued a Warning Letter concerning the previously identified violations.  AC at ¶ 110, 155.  The Warning Letter informed STAAR that until the Company addresses the deficiencies to the FDA's satisfaction, the FDA will not approve premarket applications for the Company's Class III devices,

which includes STAAR's pending application for its Toric Implantable Collamer Lens, AC at ¶ 157, which is vitally important to the Company's future.

Investors did not learn of STAAR's regulatory violations until over a month later, when the FDA published the Warning Letter on its website on June 30, 2014.  AC at ¶ 155.   Investors were shocked by this disclosure, causing STAAR's stock price to plummet nearly 17.5%, closing at $13.85 on July 2, 2014. AC at ¶ 158.

Following the precipitous decline in its stock price, STAAR scrambled to assure investors that the Company was taking the issue seriously by working with the FDA and making every effort to address the compliance deficiencies identified in the Warning Letter.  During its 2Q 2014 Earnings Call with analysts, STAAR told investors that the Warning Letter required "remedial action", Declaration of Michael J. Wernke ("Wernke Decl."), Ex. A at 5, detailing its compliance efforts.  *Id*. at 5, 6, 8, 12.  As part of these remedial efforts, the Company assured investors that "We have put a significant amount of resources both internal with employees and external *with expert quality consultants into addressing the Agency's concern and are committed to continuing to do so until we have satisfied their requirements*."  *Id*. at 6 (emphasis supplied).

STAAR told investors that the Company began its remediation efforts immediately following receipt of the March 21, 2014 Form 483.  *Id*. at 5.  On April 11, 2014, STAAR sent to the FDA "compliance branch" the Company's initial response to the Form 483.  *Id*.  On May 12, 2014, STAAR provided its first "monthly progress report", which STAAR said was part of "a proactive commitment [STAAR] made to the Agency that [the Company] would provide an update on [its] progress each month."  *Id*. at 6.  These remedial efforts continued in the same manner following receipt of the Warning Letter.  STAAR provided monthly updates on June 13, July 18, August, 14, September 12 and October 14 2014.  *See Id*. at 6; Wernke Decl. Ex. B (Oct. 30, 2014 slide   presentation) at 25.  During these monthly updates, STAAR provided detailed information to the FDA regarding its compliance and remediation efforts.  Wernke Decl.

Ex. A (July 30, 2014 Transcript) at 8, 12.   For example, as Defendant CEO Barry Caldwell explained to investors during the July 30, 2014 Earnings Call:

> [W]e do continue to supply additional information [to the FDA] but we're also tracking.  *We put out some goals and objectives to the compliance officer here in Los Angeles and said here's what we're going to do and we're going to report every month whether we did these things or not*. . . . It's *anticipated* that once they have totally reviewed our submission *that they will most likely come back for a follow-up audit*. . .

*Id*. at 8 (emphasis supplied).   Caldwell told investors "we believe at least to date we've satisfied all the questions [the FDA] had."  *Id*. at 12.

CW 1 was merely one of many independent contractors/consultants that STAAR hired to assist in these remediation efforts.   STAAR hired consultants from ProPharma Group, the FDA Group, Auk Technical Services Ltd as well as other firms.   AC ¶ 112. STAAR engaged CW 1 through ProPharma in early August to perform routine compliance work.   AC ¶ 116.   CW 1 is a consultant on FDA medical device regulatory compliance issues who worked as an FDA medical device investigator for over 20 years. AC ¶ 116.   CW 1 was engaged by STAAR to finish an internal audit of the Company's quality system controls that the Company's employees had only partially completed. AC ¶ 122.   In the course of conducting this audit, CW 1 worked with STAAR quality assurance, document control, and product complaint employees.   AC ¶ 32.   CW 1 reviewed internal audit procedures, reports, and standard operating procedures.   AC ¶ 32. STAAR does not assert that CW 1 ever worked with internal or external legal counsel.

At no point did STAAR ever suggest that the Company was anticipating litigation with the FDA.   In its Form 10-Qs filed with the SEC, STAAR disclosed information regarding the Warning Letter under the heading "*Status of Regulatory Submissions*". Wernke Decl. Ex. C at 28; Ex. D at 16.   No mention of the Warning Letter or any possible litigation appears under the headings "Legal Proceedings" or "Litigation and Claims".  Wernke Decl. Ex. C at 19, 14; Ex. D at 10, 21.

## **ARGUMENT**

In this circuit there is a "strong presumption in favor of access to court records", which can be overridden only for "compelling reasons." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). The party seeking to seal a complaint bears the burden of overcoming this strong presumption. *Kamakana v. City & Cnty. Of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). "After taking all relevant factors into consideration, the district court must base its decision on a compelling reason and articulate the factual basis for its ruling, *without relying on hypothesis or conjecture*." *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir.1995) (emphasis added).

As described below, STAAR has provided no support for the Court to order that the Complaint be sealed. While courts have permitted sealing of particular sentences in a complaint that contain privileged attorney-client communications, requests that entire complaints be sealed are routinely rejected. *See Dombrowski v. Bell Atlantic Corp.*, 128 F. Supp. 2d 216, 219 (E.D. Pa. 2000) (reviewing all 93 paragraphs of a complaint and refusing to seal the complaint except for a few sentences: "What plaintiff found during due diligence cannot fall within the ambit of the attorney-client privilege. The privilege protects only communications between a lawyer and client. It does not insulate underlying facts from the light of day."); *Jewitt v. IDT Corp.*, No. 04-1454 (JCL), 2004 BL 918, 3 (D.N.J. Aug. 06, 2004) (refusing to redact paragraphs of complaint where the defendant "has not demonstrated that the general statements therein fall within the attorney-client privilege"); *Harling v. ADO Staffing, Inc.*, No. 3:13-cv-1113-J-34JRK, 2014 BL 149186, 10 (M.D. Fla. May 29, 2014) ("to the extent Adecco argues that allegations regarding 'activities' or underlying facts are protected by the work product doctrine, that argument is unavailing.")

## I.      The Existence of a Confidentiality Agreement Does Not Warrant Sealing the Complaint

The thrust of STAAR's argument is that the Complaint should be sealed because it contains confidential information that CW 1 was not permitted to disclose.

It is well-settled that a complaint may include information orally conveyed by a defendant's former employee despite the existence of a confidentiality agreement. *See Vocera*, 2014 WL 3752134, at *2; *In re JDS Uniphase Corp. Sec. Litig.*, 238 F.Supp.2d 1127 (N.D. Cal. 2002) (permitting plaintiffs to conduct interviews of the defendant corporation's former employees to gather information about alleged securities fraud, notwithstanding a broad confidentiality agreement binding the former employees); *Chambers v. Capital Cities/ABC*, 159 F.R.D. 441 (S.D.N.Y.1995) (similar, but in employment action).

As the court in *Vocera* explained, public policy favors disclosure where, as here, (i) there was no improper conduct by counsel, (ii) there is no direct benefit to the confidential witness, (iii) other disincentives exist (*e.g.* claim of breach of contract against the former employee), (iv) there is a lack of prejudice to the defendant (the actions taken by CW 1 will be discoverable during the litigation), and, significantly, (v) the former employee witnessed the company committing fraud:

> Public policy favors enforcement of securities laws. Notably, the Sarbanes–Oxley Act of 2002 prohibits companies from discriminating against an employee for assisting federal authorities or the employee's supervisor in an investigation into securities fraud. . . . While the instant case is not a fraud investigation by federal authorities or any supervisor at Vocera, private securities litigation plays an important role in the enforcement of securities laws.

2014 WL 3752134, at *5. *See Takiguchi v. MRI Int'l, Inc.*, 2013 WL 6528507 (D. Nev. Dec. 11, 2013) (defendant cannot shield a fraud through a confidentiality agreement).

## II.   The Complaint Does Not Contain Any Communications Protected By the Attorney-Client Privilege or Work Product Doctrine

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *U.S. v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citing *Upjohn*, 449 U.S. at 389).   The privilege serves to encourage "full and frank communication between attorneys and their

clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn*, 449 U.S. at 389.

Issues concerning application of the attorney-client privilege in the adjudication of federal law are governed by federal common law. *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992). "Under federal law, the attorney-client privilege is strictly construed." *U.S. v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009). "Because [the attorney-client privilege] impedes full and free discovery of the truth[]" *Weil v. Investment/Indicators, Research and Mgmt. Inc.*, 647 F.2d 18, 24 (9th Cir. 1980), and "has the effect of withholding relevant information from the factfinder, it is applied only when necessary to achieve its limited purpose[.]" *Clarke*, 974 F.2d at 129. An eight-part test determines whether information is covered by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Ruehle*, 583 F.3d at 607. "The party asserting the privilege bears the burden of proving each essential element." *Id*. at 608.

"What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining *legal advice from the lawyer*.'" *Richey*, 632 F.3d at 566 n. 3 (quoting *U.S. v. Gurtner*, 474 F.2d 297, 299 (9th Cir. 1973) (emphasis in original). "The attorney-client privilege may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice." *Id*. at 566. However, "[i]f the advice sought is not legal advice, but, for example, accounting advice from an accountant, then the privilege does not exist." *Id*.

### a.   STAAR Has Failed to Carry Its Burden of Identifying The Allegedly Privileged Communications in the Complaint

"The party asserting the attorney-client privilege has the burden of establishing the relationship *and* privileged nature of the communication." *Richey*, 632 F.3d at 566 (emphasis supplied).   The party must "segregate the privileged information from the non-privileged information" *Ruehle*, 583 F.3d at 609, and "identify specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted." *United States v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002).   Assertion of a "blanket privilege" is invalid and mandates rejection of the claimed privilege. *See Id.* ("Blanket assertions are extremely disfavored.").

STAAR does not identify any specific communication in the Complaint that it believes is protected by the attorney-client privilege.   Instead, STAAR broadly asserts that the entire Complaint is privileged because it describes work done by CW 1 and that "[n]umerous [] allegations in the Complaint appear to have been derived from information improperly disclosed by CW 1." Def. Br. at 4.   The Court of Appeals has rejected such blanket assertions of privilege.   *Richey*, 632 F.3d at 567 (reversing as "clear error" the district court's conclusion that an entire "work file" was protected by the attorney-client privilege, finding "significant" that the party asserting the privilege "did not make a specific proffer of what communications, if any, exist in the appraisal work file, that are allegedly the proper subject of the attorney-client privilege."); *United States v. Sakai,* 2011 WL 2581909, at *8 (D. Haw. June 7, 2011) (rejecting defendant's assertion that an accountant's testimony and documents were privileged because "he was hired by their legal counsel to assist counsel in providing legal advice to the [defendants]", and that a finding of privilege would be "clear error" because the defendants "did not make a specific proffer of what communications, if any, are subject to the attorney-client privilege, choosing instead to assert a blanket privilege.").[1]

---

[1] *See also Ellsworth v. Prison Health Servs., Inc.,* 2013 WL 6587876, at *11 (D. Ariz. Dec. 12, 2013) (denying defendants' motion to preclude plaintiff from calling

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In *Larmanger v. Kaiser Found. Health Plan of Northwest*, 805 F. Supp. 2d 1050, 1054 (D. Or. 2011), the defendants moved to dismiss the complaint on the basis that it improperly relied on "communications that are privileged on their face." *Id*. Noting that it was defendants' burden to establish the privileged nature of the communications, the court concluded that the defendants "have not identified any specific facts or allegations in Plaintiff's First Amended Complaint that they contend are privileged nor have they provided any legal analysis as to the particular facts or allegations that purportedly fall under that privilege." *Id*. The court agreed with the plaintiff that "such a blanket assertion of privilege is not sufficient to establish the privilege exists, and it is unfair, inefficient, and unnecessary for Defendants to require Plaintiff's counsel and the Court to review the [First Amended Complaint] and guess which allegations Defendants contend are privileged." *Id*. (quotation mark omitted).

Having failed to carry its prima facie burden of segregating the allegedly privileged communications from non-privileged communications, STAAR's application to seal the Complaint should be denied. No further analysis is necessary.[2]

---

defendants' attorney at trial because the defendants "did not make a specific proffer of what communications, if any . . . are the subject of the attorney-client privilege"); *In re CV Therapeutics Inc.*, No. C 03-03709 SI, 2006 BL 47566 (N.D. Cal. Apr. 03, 2006) (no attorney-client privilege because the party failed to establish that the particular communications were made in confidence in the course of seeking legal advice).

[2] Implicitly acknowledging its complete failure to establish the existence of any attorney-client communications in the Complaint, STAAR preemptively asserts that even if no privilege is found, the Court should continue to seal the Complaint and afford STAAR an additional opportunity to carry its burden. Def. Br. at 1. STAAR should not be afforded a *third* bite at the apple. STAAR made its *ex parte* motion to seal the complaint on October 21, 2014. Doc. #28. Plaintiff's response, filed on October 22, 2014, specifically alerted STAAR that blanket assertions of privilege are invalid and that STAAR had failed to make a prima facie showing. Doc. #29 at 1-2 ("STAAR does not assert that any specific allegation in the Amended Complaint contains a request for or conveyance of legal advice."). As the Court Ordered, Doc. 31, the time for STAAR to prove its privilege claim as a basis for sealing the Complaint

### b.     The   Complaint   Does   Not   Contain   Any   Communications Protected by the Attorney-Client Privilege

Even if the Court were inclined to parse through each allegation in the Complaint, it would find no communications protected by the attorney-client privilege.   STAAR asserts that every action taken by CW 1 and any "information CW 1 learned in the course of ProPharma's engagement" is protected from disclosure under the attorney-client privilege.   Def. Br. at 4, 8.   This is decidedly *not* the law.   As the Supreme Court held in *Upjohn*: "*The [attorney-client] privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney.*"   449 U.S. at 395 (emphasis supplied) (quoting *Philadelphia v. Westinghouse Elec. Corp.*, 205 F. Supp. 830, 831 (D. Pa. 1962) ("[T]he protection of the privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.").[3]

Many of the allegations in the Complaint sourced to CW 1 describe actions taken by CW 1 or underlying facts known by CW 1, not communications.  *See, e.g.* AC ¶ 122. No underlying facts identified in the Complaint are protected by the attorney-client privilege.  *See Richey*, 632 F.3d at 567 ("[T]o the extent the files contain documents that were not communications, they are not protected by the attorney-client privilege").

---

was in its November 3, 2014 brief.  Having failed to carry its burden yet again, STAAR should not be permitted to delay the proceedings any longer.

[3] The fact that the confidentiality agreement contains a self-serving statement that all communications pursuant to the engagement are "privileged under the attorney-client privilege and the work product doctrine" is irrelevant.  "A document is not privileged simply because the custodian wants it to be or because it is marked as such."  *U.S. ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr.,* 2012 WL 5415108, at *6 (M.D. Fla. Nov. 6, 2012).

While the attorney-client privilege may "extend to communications with third parties who have been engaged to assist the attorney in providing legal advice", *id.* at 566, the privilege is limited to communications necessary for an attorney to render legal advice. *Id.*

The leading case on the issue is *U.S. v. Kovel*, 296 F.2d 918 (2d Cir. 1961).  In *Kovel*, the court held that the attorney-client privilege extended to confidential communications to a third-party consultant (accountant) where the role of the consultant is that of an interpreter: "What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer. ***If what is sought is not legal advice but only accounting service, . . . or if the advice sought is the accountant's rather than the lawyer's, no privilege exists***." *Id* at 922 (emphasis added). *See Richey*, 632 F3d at 566 (same).[4]

In *U.S v. ChevronTexaco Corp.*, the defendant asserted that communications between the company's attorneys and its outside accountant (Price Waterhouse) were privileged because Price Waterhouse was retained to assist Chevron in "analyzing the tax legal issues" and to assist the attorneys "in evaluating the legal merits of the transaction."  241 F. Supp. 2d 1065, 1072 (N.D. Cal. 2002).  Conducting a thorough analysis of *Kovel*, the court held that the attorney-client privilege did not attach to communications between the Company's attorneys and Price Waterhouse:

---

[4]    *See also Visa U.S.A., In*(N.D. Cal., Aug. 23, 2004)*c"*  \s "WSFTA_0640aef96f754d03bd0487f0b559a9b3" \c 3 *Visa U.S.A., Inc. v. First Data Corp.*, 2004 WL 1878209 at *5 (N.D. Cal., Aug. 23, 2004) (consultants retained for business rather than legal purpose); *McCaugherty v. Siffermann*, 132 F.R.D. 234, 237-40 (N.D. Cal. 1990). *Accord, United States v. Ackert*, 169 F.3d 136, 139 (2d Cir.1999) ("a communication between an attorney and a third party does not become shielded by the ... privilege solely because the communication proves important to the attorney's ability to represent the client"); *U.S. v. Adlman*, 68 F.3d 1495, 1500 (2d Cir. 1995) ("If .. Sequa furnished information to AA [Arthur Anderson] to seek AA's expert advice on the tax implications of the proposed transaction, no privilege would apply").

The interpreter analogy and the statement that the accountant is needed to facilitate the client's consultation both strongly indicate that ***Kovel did not intend to extend the privilege beyond the situation in which an accountant was interpreting the client's otherwise privileged communications*** or data in order to enable the attorney to understand those communications or that client data. . . .Tax questions are so closely governed by the Revenue Code and by IRS and Tax Court rulings about the meaning of the Code that an accountant's advice will be "legal" in the sense that it is based in statute and interpretations of statutes.  Therefore, we think the above-quoted statement ***precludes extension of the privilege where the accountant is hired merely to give additional legal advice about complying with the tax code even where doing so would assist the attorney in advising the client.***

*Id*. at 1071-72. Here, the Complaint does not contain any communications for the purpose of rending legal advice.  CW 1 certainly was not acting as an interpreter between STAAR and its attorneys.  CW 1 was one of many consultants/contractors retained to assist the Company in its remediation efforts and was retained solely to provide his regulatory expertise by conducting a routine internal audit.   In such circumstances, courts have found that related communications are not privileged.[5]

### c.    The Complaint Does Not Contain Any Attorney Work Product

Without citation to a single case, STAAR asserts that all underlying facts known by CW 1 are protected from disclosure under the work product doctrine.  The work product doctrine is wholly inapplicable because it applies only to "*documents* and *tangible things* that are prepared in anticipation of litigation", Fed. R. Civ. P. 26(b)(3)(A) (emphasis supplied), not oral communications or underlying facts.  *Informatica Corp. v. Business Objects Data Integration*, *Inc.,* 454 F. Supp. 2d 957, 963 (N.D. Cal. 2006) ("Unlike the attorney-client privilege, which protects all communication whether written

---

[5] *E.g. In re CV Therapeutics, Inc. Sec. Litig.,* 2006 WL 1699536, at *8 (N.D. Cal. June 16, 2006) (no attorney-client privilege for a memo from counsel to consultants because while "CVT has submitted evidence that these individuals entered into confidentiality agreements with CVT, [it] does not identify whether they [inter alia] . . . played a role in facilitating legal rather than business advice."); *Adlman,* 68 F.3d at 1500 (privilege claim rejected since evidence was subject to conflicting interpretations).

or oral, work-product immunity protects documents and tangible things, such as memorandums, letters, and e-mails."); *In re Echostar Communications Corp.,* 448 F.3d 1294, 1301 (Fed. Cir. 2006) (same).[6]

Moreover, to be entitled to work product protection STAAR has the burden of establishing that the documents at issue were prepared "in anticipation of litigation." *Richey*, 632 F.3d at 568. It is insufficient to show merely that a party "had the prospect of litigation in mind when it directed the preparation of [a document]," or that a document "might also help in preparation for litigation." *U.S. v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998). Rather, STAAR is required to establish that the "document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation." *Richey*, at 568 (quoting *Adlman*, 134 F.3d at 1202). STAAR has presented no evidence that the work done by CW 1 or the other consultants was done to prepare for any litigation. Rather, as the Company disclosed to investors, the consultants were hired to help the Company remediate the observations identified during the FDA's inspection and in the Warning Letter, which the Company was voluntarily disclosing to the FDA. To the extent that hiring the consultants had any other purpose, it was to assure investors and the public that the Company was taking the issue seriously, not that it was preparing for litigation. *See In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 466 (S.D. N.Y. 1996); *Allied Irish Banks, p.l.c. v. Bank of America, N.A.*, 240 F.R.D. 96, 99 (S.D.N.Y. 2007).

---

[6] "The courts [have] consistently held that the work product concept [furnishes] no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned, or the persons from whom he or she had learned such facts, or the existence or nonexistence of documents, even though the documents themselves may not be subject to discovery." Wright & Miller, supra, § 2023; *see also Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) ("Because the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within work product.").

It is beyond contention that as a medical device company regulated by the FDA, STAAR would have conducted internal audits and remediated regulatory violations identified in the Warning Letter irrespective of any possibility of litigation.  *See Lewis v. Wells Fargo*, 266 F.R.D. 433, 440 (N.D. Cal. 2010) (finding that audit documents that non-attorney employees prepared for an audit under the Fair Labor Standards Act were not work product.); *Marceau v. IBEW Local 1269*, 246 F.R.D. 610 (D. Ariz. 2007) (company audit documents prepared "to ensure compliance with the law and address 'potential future litigation' cannot create a blanket work-product protection"). [7]

## III.      Plaintiff Should Not Be Barred From Contacting CW 1

Because STAAR has failed to establish that CW 1 has any attorney-client privileged information, there is absolutely no basis for an order prohibiting Plaintiff (or his counsel) from contacting CW 1.  *See supra* at 5-6.

Even if CW 1 did possess attorney-client privileged information, it would still be improper for the Court to prohibit Plaintiff from interviewing CW 1.  "The attorney-client privilege, like most other privileges, is an *evidentiary* privilege-it protects against the compelled disclosure in court, or in court-sanctioned discovery, of privileged communications. It is not a roving commission to police voluntary, out-of-court communications." *Wharton v. Calderon*, 127 F.3d 120, 12051 (9th Cir. 1997) (emphasis in original).  Thus, as the Court of Appeals made perfectly clear in *Warton*, the attorney-client privilege "does not provide a legal basis . . . to bar out-of-court interviews to which the rules of evidence do not apply." *Id.*[8]

---

[7] Even if a privilege did attach to the facts identified in the Complaint, they would be subject to the crime-fraud exception because the Company was attempting to deceive the FDA as to the Company's compliance and the adequacy of its internal controls. *See* ¶¶ 119-120, 125, 129-130.  "When a lawyer's advice is sought to further a crime or fraud, those communications are not privileged." *Martin*, 278 F.3d at 1001.

[8] STAAR confusingly argues that a different outcome is warranted because CW 1 is *not* an attorney.  Def. Br. at 11-12.  STAAR misreads *Wharton*, which states that even if a bar on out-of-court interviews were permissible, it would be improper where, as

PLAINTIFF'S RESPONSE TO STAAR'S APPLICATION TO SEAL AMENDED COMPLAINT
CASE NO. 14-CV-05263-MWF-RZ                                                          14

STAAR's reliance on *Kane v. Chobani, Inc.*, 2013 WL 3991107, at *7 (N.D. Cal. Aug. 2, 2013) is misplaced.  *Kane*, which fails to acknowledge *Wharton*, involved a situation in which plaintiff's counsel – who was suing Chobani – retained Chobani's then current litigation expert (who was privy to Chobani's litigation strategy) as an expert in related litigations.  *Id.*[9]  Here, CW 1 was not retained by STAAR as a litigation expert, never discussed any litigation strategy with STAAR, and has not been retained as an expert for Plaintiff.  CW 1 is no different than any other former employee of STAAR who conducted internal audits.  The underlying factual knowledge he possesses is not privileged and there is no "compelling reason" to prohibit contact.[10]

## CONCLUSION

For the reasons stated herein, STAAR's application to seal the Complaint and prohibit Plaintiff and his counsel from contacting CW 1 should be denied.

---

here, the individual that possesses the allegedly privileged information is not before the Court. *Wharton*, 127 F.3d at 1206.

[9] The remainder of the cases cited by STAAR are out-of-circuit or predate *Wharton*.

[10] For the reasons discussed above, STAAR's threat of disqualification of Plaintiff's counsel, Def. Br. at 1 n.2, is likewise without merit.  "Disqualification [of counsel] is a drastic course of action." *DeLuca v. State Fish Co.*, 217 Cal.App. 4th 671, 685–86 (2013).  Because of their susceptibility to tactical abuse, "[m]otions to disqualify counsel are strongly disfavored" *Visa U.S.A. v. First Data Corp.*, 241 F.Supp.2d 1100, 1104 (N.D.Cal.2003), and should not be permitted "except when of absolute necessity."  *In re Marvel*, 251 B.R. 869 (Bankr.N.D.Cal.2000), aff'd 265 B.R. 605 (N.D.Cal.2001).  The cases relied on by STAAR – *Shandralina G. v. Homonchuk*, 147 Cal. App. 4th 395, 407 (2007); *Cargill Inc. v. Budine*, 2007 WL 1813762  (E.D. Cal. June 22, 2007) – are inapposite as each concerns a party hiring the opposing party's former expert witness in the litigation (who were privy to the attorney's legal strategies) to provide expert testimony against the opposing party in the same litigation. Here, CW 1 is only a witness to STAAR's fraud.  The "mere exposure to the confidences of an adversary does not, standing alone, warrant disqualification." *Roush v. Seagate Tech.*, LLC, 150 Cal.App. 4th 210, 219 (2007).

DATED: November 10, 2014

**POMERANTZ LLP**

By: *s/ Michael J. Wernke*
Michael J. Wernke
Marc I. Gross
Jeremy A. Lieberman
Francis P. McConville
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile:  (212) 661-8665

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184

**GLANCY BINKOW & GOLDBERG LLP**
Lionel Z. Glancy
Michael Goldberg
Robert V. Prongay
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160