UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-05263-MWF-RZ                Date:  April 12, 2016
Title:    Edward Todd -v- STAAR Surgical Company, et al.

Present:  The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

|  |  |
|---|---|
| Relief Deputy Clerk:<br>Cheryl Wynn | Court Reporter:<br>Not Reported |
| Attorneys Present for Plaintiff:<br>None Present | Attorneys Present for Defendant:<br>None Present |

Proceedings (In Chambers):   ORDER DENYING DEFENDANTS' MOTION TO
                             DISMISS [96]

        Before the Court is Defendants' Motion to Dismiss Plaintiff's Corrected Second
Amended Complaint for Failure to State a Claim (the "Motion"), filed on September
21, 2015.  (Docket No. 96).  Lead Plaintiff Edward Todd submitted an Opposition to
the Motion on October 19, 2015, and Defendants' Reply followed on November 2,
2015.  (Docket Nos. 109, 118).  The Court read and considered the parties'
submissions, and held a hearing on **November 16, 2015**.

        The Motion is **DENIED**.  Lead Plaintiff alleges with particularity that
Defendants misled the investors of STAAR Surgical Company, Inc. ("STAAR" or the
"Company") into believing that the Company was in compliance with FDA
regulations.  Viewed in the light most favorable to Lead Plaintiff and the putative class,
Defendants' public announcements could be deemed to create a false impression that
STAAR's pending application for FDA approval of a major product would not
encounter any serious impediments.  Lead Plaintiff's allegations are also sufficient to
create a reasonable inference that Defendants knew of the Company's regulatory
violations at the time they made their optimistic statements.

## I.    BACKGROUND

        Lead Plaintiff Todd filed this security class action on behalf of investors who
acquired STAAR securities between November 1, 2013 and June 30, 2014 ("Class
Period").  (*See* Second Amended Complaint ("SAC") ¶ 1 (Docket No. 88); Order

---

**CIVIL MINUTES—GENERAL                                            1**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-05263-MWF-RZ                    Date:  April 12, 2016

Title:      Edward Todd -v- STAAR Surgical Company, et al.

Appointing Lead Plaintiff (Docket No. 22)).  The SAC asserts violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 arising from Defendants' alleged statements that STAAR was in compliance with FDA regulations when, in fact, the FDA had observed serious compliance violations.  (SAC ¶ 2).  According to Lead Plaintiff, the misleading statements artificially inflated the value of STAAR securities, which declined sharply once the results of the FDA investigation became public.  (*Id.*).

The following background is based on the allegations of the SAC:

STAAR designs, manufactures, and sells implantable lenses used in corrective and cataract eye surgery.  (*Id.* ¶ 2).  The company is relatively small, with 335 employees and, until recently, four manufacturing facilities worldwide.  (*Id.* ¶¶ 3, 20).  STAAR's major product is the Implantable Collamer Lens ("ICL") that consists of three models: one to treat myopia, one to treat myopia with astigmatism, and one to treat hyperopia.  (*Id.* ¶ 21).  All three models have been marketed overseas for years, but only the myopic version ("MICL") received FDA approval in the United States.  (*Id.*).  The Toric ICL ("TCIL"), used to cure myopia with astigmatism, is currently under review with the FDA.  (*Id.*).

The FDA classifies the ICL as a "Class III" medical device, or a product deemed to pose the greatest risk to health and to require most extensive regulation.  (*Id.* ¶ 35).  One aspect of such regulation is an inspection of the manufacturing facilities to ensure that the production of a Class III device is done in accordance with the approved specifications.  (*Id.* ¶¶ 39, 42); *see* 21 C.F.R. § 820.20, *et seq*.  The FDA, of course, does not prescribe in exacting detail the production process of every possible device but only establishes a framework within which the manufacturers must operate.  (SAC ¶ 45); 21 C.F.R. § 820.20.  As is pertinent here, the regulations require manufactures to create "design controls," which safeguard the quality of the device from its inception to obsolescence.  (*Id.* ¶ 47); 21 C.F.R. § 820.20-30.  Manufacturers are mandated, moreover, to "establish and maintain a [Design History File] for each type of device. The DHF [must] contain or reference the records necessary to demonstrate that the design was developed in accordance with the approved design plan and the requirements of this part."  (SAC ¶ 51); 21 C.F.R. § 820.30(j).  If a company fails to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-05263-MWF-RZ                Date:  April 12, 2016

Title:      Edward Todd -*v*- STAAR Surgical Company, et al.

comply with such regulations, the FDA may refuse any pending requests for product approval.  (SAC ¶ 41).

## A.      STAAR's Past Non-Compliance with FDA Regulations

STAAR has experienced difficulties in obtaining FDA approval of its devices ever since its first attempt at penetrating the U.S. market.  Although the FDA Ophthalmic Devices Panel recommended approval of MCIL in as early as October 2003, the authorization process experienced significant delays after an FDA inspector observed numerous deficiencies in STAAR's California manufacturing facility.  (*Id.* ¶ 68).  The inspector identified the regulatory violations in a Form 483, which is used to notify the establishment's top management of any objectionable conditions uncovered during FDA inspections.  (*Id.* ¶¶ 63, 69).  Although the violations threatened to postpone the much-anticipated approval of MICL, STAAR did not disclose the contents of Form 483 to its investors.  (*Id.* ¶ 69).

In December 2003, the FDA issued a Warning Letter to STAAR memorializing the same violations.  (*Id.* ¶ 70).  A Warning Letter is used only for "violations of regulatory significance, i.e., those that may actually lead to an enforcement action if the documented violations are not promptly and adequately corrected."  (*Id.* ¶ 65); FDA, *Regulatory Procedures Manual* at 4.1 (July 2012) ("*RPM*"), *available at* http://www.fda.gov/iceci/compliancemanuals/regulatoryproceduresmanual/default.htm .  The agency's own policy states that a "Warning Letter should not be issued if the agency concludes that a firm's corrective actions are adequate and that the violations that would have supported the letter have been corrected."  *RPM* at 4.1-3.  Despite the obvious significance of the Letter, STAAR again failed to disclose its existence to the investors.  (SAC ¶ 70).

A month later, the FDA published the Warning Letter on its website.  (*Id.* ¶ 71).  STAAR's stock price dropped 17.5% the same day.  (*Id.*).  Almost immediately thereafter, the company held a conference call where analysts criticized STAAR for withholding such important information.  (*Id.* ¶ 73).  One analyst lamented that any violations that "could delay the approval of [MICL] . . . seems to be pretty material to

---

CIVIL MINUTES—GENERAL                                    3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-14-05263-MWF-RZ                Date:  April 12, 2016**

Title:      Edward Todd -*v*- STAAR Surgical Company, et al.

me, material information." (*Id.*).  As a follow-up to the Warning Letter, the FDA conducted a re-audit of the California facility and issued a second Form 483 containing 36 observed deviations from the FDA requirements.  (*Id.* ¶ 74).  This time, STAAR disclosed the identified violations, followed by another 38% hit to the Company's shares.  (*Id.*).  After numerous additional delays, the FDA finally approved the MICL in December 2005.  (*Id.* ¶ 77).

A separate securities class action was previously brought in this District.  *Yanek v. Staar Surgical Co.* ("*STAAR I*"), 388 F. Supp. 2d 1110 (C.D. Cal. 2005).  After filing an unsuccessful motion to dismiss, STAAR settled the case.  (Opposition at 6).

## B.      **STAAR's Conduct During the Class Period**

In 2006, STAAR began the same approval process for the TICL.  (*Id.* ¶ 78).  FDA approval of the TICL is of outmost importance to the company due to the dearth of similar products in the U.S. market.  (*Id.* ¶¶ 24, 79).  Indeed, TICL sales in foreign markets account for approximately 50% of STAAR's revenue.  (*Id.* ¶ 79).  STAAR itself acknowledged in a SEC filing that "[w]ithout the Toric ICL, the ICL product line is not likely to reach its full market potential in the U.S."  (*Id.* ¶ 80).

Between 2007 and 2013, STAAR kept its investors informed of its compliance with FDA regulations and any events that may affect the anticipated approval of TICL.  (*Id.* ¶¶ 81-84).  In the Company's 2009, 2010, and 2011 Form 10-Ks filed with the SEC, STAAR disclosed inspections of its manufacturing facilities, the results of those inspections, and the issuance of Form 483s and Warning Letters.  (*Id.* ¶¶ 86-88).  STAAR even provided a summary of its oral communications with an FDA inspector.  (*Id.* ¶ 90).  In other words, STAAR embarked on an "era of transparency," consistent with its legal duties.  (*Id.* ¶ 85).

But things began to change in 2013 when STAAR decided to consolidate its manufacturing operations into one facility in California.  (*Id.* ¶ 93).  The consolidation process significantly exacerbated the pre-existing deficiencies in STAAR's quality assurance practices.  (*Id.* ¶¶ 93, 94).  STAAR's California facility, for example, turned

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-05263-MWF-RZ                    Date:  April 12, 2016
Title:      Edward Todd -*v*- STAAR Surgical Company, et al.

into a "workplace of chaotic decision-making in which no one seemed to know what
was going on, and manufacturing during this period became very disorganized." (*Id.* ¶
94). Two confidential witnesses reported substantial defects in lenses that were
supposed to be ready for shipment, including the presence of glass in the bottles of
some products. (*Id.* ¶¶ 94-95).

STAAR's Swiss facility experienced similar difficulties prior to the completion
of consolidation. (*Id.* ¶ 96). In August 2013, FDA inspectors observed deviations
from FDA regulations in the manufacturing process. (*Id.*). The inspectors
memorialized their observations in a Form 483 that was provided to and discussed with
management on August 3, 2013. (*Id.*). The management nonetheless failed to correct
the identified deficiencies, which persisted even after the transfer of manufacturing
operations to California in October 2013. (*Id.*).

In February 2014, the FDA began inspecting STAAR's California facility. (*Id.* ¶
97). Despite the inspector's numerous requests, the Company could not produce the
Design History File for the ICL, which is necessary to ensure proper and safe
manufacturing of STAAR's medical devices. (*Id.* ¶ 98). Instead, the management
provided certain summary information that the FDA immediately deemed inadequate.
(*Id.*). Without proper documentation, "STAAR was manufacturing the MICL and
other products, which were being surgically implanted into patients' eyes, without
ensuring that the sign used to manufacture the lenses was correct, that the actual
manufacturing of the lenses was using the correct materials, or according to any
approved designs." (*Id.* ¶ 102).

After the investigation came to an end on March 23, 2014, the FDA inspector
held a close-out meeting where he presented a Form 483 identifying STAAR's myriad
violations to a senior regulatory compliance person. (*Id.* ¶ 101). As the inspector
explained, STAAR failed to establish, maintain, and implement design controls under
21 C.F.R. § 820.30(a)-(j). (*Id.* ¶ 102). To the extent such design controls existed at all,
the necessary documentation—the Design History File—was never transferred to the
California facility from Switzerland. (*Id.*). In all, the FDA identified fifteen separate

CIVIL MINUTES—GENERAL                                             5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-14-05263-MWF-RZ**                    **Date:  April 12, 2016**
Title:       Edward Todd -*v*- STAAR Surgical Company, et al.

violations of FDA regulations, which culminated in a Warning Letter issued on May 21, 2014.  (*Id.* ¶¶ 103-107).

Lead Plaintiff alleges that STAAR made the following statements concerning its products and facilities:

- **November 1, 2013:**  In a Form 10-Q, STAAR noted that a "key operational metric" was managing "the manufacturing consolidation with no material disruption to customer supply requirements or quality" and that "our consolidation efforts continue to proceed according to our plan."  (*Id.* ¶ 109).

- **March 12, 2014:**  In a Form 10-K, STAAR stated that it "believes that it is substantially in compliance with the FDA's Quality System Regulations and Medical Device Reporting regulations."  The company also reiterated that "our consolidation efforts continue to proceed substantially according to our plan."  (*Id.* ¶¶ 113, 115).

- **March 14, 2014:**  STAAR CEO Defendant Caldwell told an independent advisory panel to the FDA that the company had improved its regulatory compliance, and that only one of four inspections of the company's various facilities in previous years resulted in negative observations by the FDA. And even those observations, Caldwell stated, did not "warrant regulatory follow-up at this time."  (*Id.* ¶ 118).

- **March 17, 2014:**  STAAR announced that the advisory panel recommended approval of the TICL.  (*Id.* ¶ 120).

- **May 5, 2014:**  STAAR filed a Proxy Statement, stating, "STAAR's standing with the FDA and other regulators, and its reputation with customers depends on maintaining a corporate culture that emphasizes compliance at all levels, and STAAR aims for continuous improvement in the quality of its processes and products."  (*Id.* ¶ 124).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-05263-MWF-RZ                    Date:  April 12, 2016
Title:      Edward Todd -v- STAAR Surgical Company, et al.

- **May 13, 2014:** STAAR stated that the financial information contained in its Form 10-Q was accurate and disclosed material changes to the company's internal control over financial reporting.  STAAR further reiterated that the "consolidation efforts are proceeding according to plans and we expect this to continue through completion in the middle of 2014."  (*Id.* ¶ 126).

Investors did not learn of the results of the FDA investigation until the agency published the Warning Letter on June 30, 2014.  (*Id.* ¶ 129).  The FDA identified the deficiencies discovered at the California facility and advised that any pending applications for Class III devices, such as the TILC, "will not be approved until the violations have been corrected."  (*Id.* ¶¶ 130-31).  STAAR's shares dropped almost 17.5% in value within two days of the FDA's announcement on heavy trading volume. (*Id.* ¶ 132).  Lead Plaintiff filed this class action approximately a week later.

## II.    **LEGAL STANDARD**

To state a claim under Section 10(b) of the Exchange Act, a plaintiff must allege (i) a material misrepresentation (or omission); (ii) scienter (a wrongful state of mind); (iii) a connection with the purchase or sale of a security; (iv) reliance (also known as "transaction causation"); (v) economic loss; and (vi) loss causation (a causal connection between the material misrepresentation and the loss).  *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005).

Allegations of securities fraud are held to the heightened pleading requirements of the Private Securities Litigation Reform Act (the "PSLRA") and Federal Rule of Civil Procedure 9(b).  *See Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 313 (2007).  The PSLRA requires plaintiff to plead with particularity "each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading," and "state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).  The complaint must also state sufficient "facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).  The requisite state of mind must be a "departure from the standards of ordinary care that presents a danger of misleading buyers that is either known to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-05263-MWF-RZ                 Date:  April 12, 2016
Title:       Edward Todd -*v*- STAAR Surgical Company, et al.

defendant or so obvious that the actor must have been aware of it."  *Zucco Partners,
LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009) (internal quotations and
citations omitted).

In sum, a complaint "must contain allegations of specific 'contemporaneous
statements or conditions' that demonstrate the intentional or the deliberately reckless
false or misleading nature of the statements when made."  *Ronconi v. Larkin*, 253 F.3d
423, 432 (9th Cir. 2001) (affirming the dismissal of a securities fraud class action on
the ground that optimistic statements made eight months before merger and conclusory
allegations that statements were false when made were insufficient to raise a strong
inference that defendants intentionally or with deliberate recklessness made false or
misleading statements to investors).  "If a plaintiff fails to plead either the alleged
misleading statements or scienter with particularity, the complaint must be dismissed."
*In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1018 (S.D. Cal. 2005)
(internal quotations and citations omitted).  These heightened requirements "prevent[]
a plaintiff from skirting dismissal by filing a complaint laden with vague allegations of
deception unaccompanied by a particularized explanation stating why the defendant's
alleged statements or omissions are deceitful."  *Metzler Inv. GMBH v. Corinthian
Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).  On the other hand, "courts must
be careful not to set the hurdles so high that even meritorious actions cannot survive a
motion to dismiss.  Such a regime would defeat the remedial goals of the federal
securities laws."  *Id.*

## III.  **JUDICIAL NOTICE**

Defendants request this Court to take judicial notice of publicly-available SEC
filings, materials issued by federal regulatory agencies, and press releases.  (Requests
for Judicial Notice (Docket Nos. 97, 119)); *see Dreiling v. Am. Express Co.*, 458 F.3d
942, 946 n.2 (9th Cir. 2006) ("[The court] may consider documents referred to in the
complaint or any matter subject to judicial notice, such as SEC filings."); *Wilson v.
Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1146 n.3 (N.D. Cal. 2013) (taking
judicial notice of FDA warning letters); *In re Homestore.com, Inc. Sec. Litig.*, 347 F.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-05263-MWF-RZ                    Date:  April 12, 2016
Title:      Edward Todd -*v*- STAAR Surgical Company, et al.

Supp. 2d 814, 817 (C.D. Cal. 2004) ("[T]he Court may take judicial notice of press releases.").

Defendants' requests are **GRANTED**.

## IV.   DISCUSSION

Defendants challenge two elements of Lead Plaintiff's claim: the existence of an actionable misstatement and scienter:

As to the existence of an actionable misstatement, Defendants argue that Lead Plaintiff "impermissibly copies allegations from FDA forms and letters that are nothing more than non-final observations of possible non-compliance with FDA rules." (Motion at 2).  The allegations comprising observations of confidential witnesses should be also ignored, argue Defendants, because none of the witnesses were employed during the Class Period.  (*Id.*).  And in any event, the alleged misstatements are "inactionable puffery" or "forward-looking statements" protected under PLSRA's "safe harbor."  (*Id.*).

As to scienter, Defendants argue that the SAC does not allege sufficient facts showing that either of individual Defendants—CEO Barry Caldwell and Global Quality Assurance Vice President John Santos—acted with the intent to deceive investors.  (*Id.*).

### A.      Material Misstatements or Omissions

To give rise to an actionable claim for securities fraud, a statement or omission "must be misleading; in other words it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists."  *Brody v. Transitional Hosp. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).  In general, "whether a public statement is misleading, or whether adverse facts were adequately disclosed is a mixed question to be decided by the trier of fact."  *Fecht v. Price Co.*, 70 F.3d 1078, 1081 (9th Cir. 1995) (superseded by statute on other grounds) (citing *Durning v. First*

---

**CIVIL MINUTES—GENERAL**                                    **9**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-05263-MWF-RZ                Date:  April 12, 2016
Title:      Edward Todd -*v*- STAAR Surgical Company, et al.

*Boston Corp.*, 815 F.2d 1265, 1268 (9th Cir. 1987)).  "[O]nly if the adequacy of the disclosure . . . is so obvious that reasonable minds could not differ are these issues appropriately resolved as a matter of law."  *Id.* (internal quotations omitted).

The alleged misrepresentations listed in the SAC can be divided into three categories: (1) statements affirming the accuracy of STAAR's financial reports; (2) statements about STAAR's compliance with FDA regulations, and (3) statements concerning the Company's consolidation efforts.

As to the first category, the SAC alleges that STAAR falsely assured investors in SEC filings that its reported financial information was correct and up-to-date.  (SAC ¶¶ 109-15).  Lead Plaintiff claims that Defendants reiterated STAAR's "previously reported financial and operational results" and represented that STAAR's financial reports were "accurate and disclosed any material changes to the Company's internal control over financial reporting."  (*Id.* ¶ 109).  But as Defendants point out, the SAC does not specify the manner in which the Company's financial results and reports were false or misleading in any quarter during the Class Period.  (Motion at 10); *see In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1153 (C.D. Cal. 2007) (dismissing action because the plaintiff failed to allege, among other things, "why the statements were false [and] the amount by which the financial statements were misstated").  Lead Plaintiff conceded at the hearing that such allegations are insufficient to state a claim for securities fraud.  Accordingly, the alleged statements regarding STAAR's financial reporting are not actionable.

The SAC's allegations falling into the remaining two categories are more compelling.  On March 12, 2014, while acknowledging that the "ability to continue [] U.S. business depends on the continuous improvement of [] quality systems and constant vigilance in [] compliance with FDA regulations," STAAR expressed its "belief" that "it is substantially in compliance with the FDA's Quality System Regulations and Medical Device Reporting regulations."  (SAC ¶ 113).  STAAR reiterated the same sentiment two days later when it informed an independent panel to the FDA that the Company improved its regulatory compliance and that only one of four inspections resulted in negative observations by the agency.  (*Id.* ¶ 118).  On

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-05263-MWF-RZ                    Date:  April 12, 2016
Title:       Edward Todd -*v*- STAAR Surgical Company, et al.

March 17, 2014, the Company announced that the panel recommended market approval for the TILC, bringing the product closer to the long-awaited U.S. launch. (*Id.* ¶ 120).

Equally important, STAAR assured investors in both March and May 2014 that a "key operational metric" was managing "the manufacturing consolidation with no material disruption to customer supply requirements or quality." (*Id.* ¶¶ 115, 126). Recognizing that noncompliance with FDA regulations could result in the postponement of manufacturing at STAAR's only remaining facility post-consolidation, STAAR claimed to have "placed a priority on maintaining the continuity and quality of our product supply." (*Id.* ¶ 116). STAAR further stated that "[t]o satisfy . . . [FDA] regulations, we must follow strict protocols to confirm that products made at a new site are equivalent to those made at the currently approved site." (*Id.*).

The Court is satisfied that a trier of fact could find those statements misleading at the time they were made. STAAR's representations created an impression that the California manufacturing facility was in compliance with FDA rules such that there would be no disruption in the supply of STAAR's products and no hiccups in the approval process for the TICL. But this impression might be deemed deceiving because the FDA observed numerous violations of its regulations before STAAR made any of its positive announcements. (*Id.* ¶ 92). The very fact that the FDA identified those issues risked delaying FDA approval of STAAR's highly profitable product. The trier of fact could therefore conclude that, contrary to STAAR's statements, the Company was not "in compliance with FDA regulations," that the news regarding the FDA panel's recommendation were misleadingly optimistic, and that the manufacturing consolidation was, in fact, experiencing "material disruptions." In sum, the SAC's allegations that the reality facing STAAR was bleaker than the picture the Company painted for its investors are sufficient to satisfy the PSLRA and Rule 9(b).

The district court in *STAAR I* reached the same result under similar circumstances. 388 F. Supp. 2d at 1129. The district court determined that statements such as "we are extremely pleased with the panel's recommendation and vote of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-05263-MWF-RZ                Date:  April 12, 2016
Title:     Edward Todd -*v*- STAAR Surgical Company, et al.

confidence and look forward to working with the FDA staff to complete review of the ICL" and "we look forward to the commercialization of the ICL in the U.S." were false and misleading.  *Id.*  As the court explained, "STAAR's ICL business strategy required prompt FDA approval of the ICL device . . . . Thus, Defendants' omission of facts suggesting a possible delay in approval was misleading."  *Id.*  This result is common sense:  STAAR may not lead its investors to believe that it is in compliance with FDA regulations while knowing that an FDA inspector concluded otherwise.  As discussed below, Defendants' arguments to the contrary are unavailing.

### 1.     *Reliance on Statements From FDA Forms and Letters*

Defendants first argue that the SAC may not rely on FDA inspections and observations to support its claims.  (Mot. at 7; Reply at 5).  Defendants fault Lead Plaintiff for copying statements from Form 483s and the Warning Letter, instead of conducting his own investigation into alleged violations of FDA regulations.  (Mot. at 8).  Given the lack of validation of the FDA's findings and the "absence of independent factual support," Defendants urge the Court to ignore the SAC's allegations of deficiencies in STAAR's manufacturing and quality assurance processes. (*Id.* at 8).

In support of their contention, Defendants cite cases where courts disregarded allegations copied from the SEC's complaints in parallel enforcement actions.  In *In re Connetics Corp. Securities Litigation*, for instance, the district court held that "it would make little sense that an attorney 'somehow can rely on the analysis of attorneys in *different actions* and who are presumably from different law firms.'"  542 F. Supp. 2d 996, 1005 (N.D. Cal. 2008) (emphasis in original) (citations omitted).  A court in this District similarly noted that the SEC's allegations of the "very same pattern of abuse" cannot bolster the claims of fraud in a private securities class action.  *ScripsAmerica, Inc. v. Ironridge Global LLC*, No. CV1403962MMMAGRX, 2015 WL 4747807, at *32 (C.D. Cal. Aug. 11, 2015).  In such circumstances, an independent inquiry is necessary to establish facts on which to ground the complaint.  *Kyung Cho v. UCBH Holdings*, Inc., 890 F.Supp.2d 1190, 1203 (N.D. Cal. 2012).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-05263-MWF-RZ                    Date:  April 12, 2016
Title:      Edward Todd -v- STAAR Surgical Company, et al.

But Defendants' argument misses the mark.  In all cases on which Defendants
rely, the plaintiffs attempted to use facts taken from SEC investigations to state their
own claims for relief.  Lead Plaintiff does not do so here.  Instead, Lead Plaintiff relies
on **the very existence** of FDA investigations and observations to show that STAAR's
statements were misleading.  An analogy to the evidentiary hearsay rule comes to
mind.  The SAC does not purport to rely on the accuracy of the FDA's conclusions but
rather that Defendants were aware of those conclusions when they made the statements
at issue.  As courts have recognized, representations of compliance with FDA rules
may be misleading in light of the FDA's contrary position, even if that position is later
determined to lack merit.  *See, e.g., Pub. Pension Fund Grp. v. KV Pharm. Co.*, 679
F.3d 972, 982 (8th Cir. 2012) (upholding a complaint based on FDA inspection reports
and stating that the "issuance of a Form 483 represents a risk that the FDA may take
corrective action against a company, and thus a company is obligated to assess the
seriousness of the risk and disclose such information to potential investors if it also
represents it is in compliance with FDA regulations and cGMP"); *STAAR I*, 388 F.
Supp. 2d at 1129 (finding the FDA's issuance of a Form 483 a material "fact[ ] bearing
on possible delays in FDA approval of the ICL").

The allegations show, moreover, that Lead Plaintiff's counsel **did** conduct an
independent investigation into STAAR's alleged violations of FDA regulations.  (SAC
¶ 30).  The SAC provides detailed testimony from three confidential witnesses "who
worked at STAAR, either as an employee, contract employee or consultant, and had
experience with STAAR's policies, practices, and methods of manufacture, storage,
and quality control and quality assurance methods."  (*Id.*).  The SAC describes the
witnesses, as well as their roles and responsibilities, with a large degree of specificity.
(*Id.* ¶¶ 31-33).  Each witness's statements are based on personal knowledge, not
hearsay, and involve various problems they observed in the manufacturing process at
STAAR's California facility.  (*See, e.g., id.* ¶ 93); *see also Zucco*, 552 F.3d at 996
(statements of confidential witnesses must be based on their personal knowledge).

Defendants nonetheless urge the Court to disregard such allegations because the
witnesses left STAAR before November 2013 and are "unable to allege a single
observed violation of FDA regulations, or management's response thereto, during the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-05263-MWF-RZ                    Date:  April 12, 2016

Title:      Edward Todd -*v*- STAAR Surgical Company, et al.

Class Period."  (Reply at 5).  It is, of course, true that the witnesses' descriptions of
FDA violations preceding the Class Period do not—by themselves—give rise to
securities fraud.  Lead Plaintiff sensibly does not argue otherwise.  But it simply does
not follow that the Court must completely shut its eyes to such allegations when
examining the overall context in which the statements at issue were made.  *In re Merck
& Co., Inc. Sec. Litig.*, 432 F.3d 261, 272 (3d Cir. 2005) ("[B]oth post-class-period
data and pre-class data could be used to confirm what a defendant should have known
during the class period, [since]  any information that sheds light on whether class
period statements were false or materially misleading is relevant.") (internal quotation
marks and citations omitted).  Because the witnesses' descriptions certainly bear on
STAAR's knowledge of purported violations and intent to deceive its investors, the
Court gives these allegations their due weight.

## 2.      *Statements of Puffery*

Next, Defendants contend that "most of the alleged misstatements are
inactionable puffery."  (Motion at 11-12).  In the Ninth Circuit, "vague, generalized
assertions of corporate optimism or statements of 'mere puffing' are not actionable
material misrepresentations under federal securities laws."  *In re Impac Mortg.
Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1096 (C.D. Cal. 2008) (concluding
that CEO's statements that company was expecting "solid" loan origination and
acquisition in the forthcoming year were mere puffery not actionable as material
misrepresentations); *see also In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir.
2010) ("When valuing corporations . . . investors do not rely on vague statements of
optimism like 'good,' 'well-regarded,' or other feel good monikers.  This mildly
optimistic, subjective assessment hardly amounts to a securities violation.").

The Court is not persuaded that the representations at issue are no more than
"generalized statements of optimism" that are "not capable of objective verification."
(Motion at 11).  The accuracy of the following statements, for example, is contingent
on historical facts that can be easily verified:

CIVIL MINUTES—GENERAL                                                    14

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-05263-MWF-RZ                    Date:  April 12, 2016
Title:      Edward Todd -*v*- STAAR Surgical Company, et al.

- STAAR's basis for "believing" that "it is substantially in compliance with the FDA's Quality System Regulations and Medical Device Reporting regulations" (SAC ¶¶ 111-113) could be compromised by the FDA's observations of regulatory violations.

- STAAR's announcement that an "independent advisory panel on Food and Drug Administration recommended marketing approval for its TILC, bringing it closer to a long-awaited U.S. launch" (*id.* ¶ 120) could be misleading if the FDA observed noncompliance with its rules that would delay approval of the TILC.

- Whether a "key operational metric" is "[m]anag[ing] the manufacturing consolidation with no material disruption to customer supply requirements or quality" (*id.* ¶¶ 109, 115) depends on the existence of actual disruption in manufacturing, such as noncompliance with FDA regulations.

- Whether "consolidation efforts are proceeding according to plans" (*id.* ¶ 126) is contingent on the existence of regulatory violations, unless STAAR's "plans" include noncompliance with FDA rules.

Those statements, while certainly optimistic, are capable of objective verification and do not constitute "puffery."  *See, e.g., In re Nuvelo, Inc. Sec. Litig.*, 668 F. Supp. 2d 1217, 1230 (N.D. Cal. 2009) ("[O]ptemistic statements about alfimeprase's path to regulatory approval" are misleading because "they concealed or downplayed known present risks related to regulatory approval").  The cases Defendants cite, by contrast, involved vague statements incapable of verification.  *See Wozniak v. Align Tech., Inc.*, 850 F. Supp. 2d 1029, 1036-37 (N.D. Cal. 2012) (holding "we are very pleased with our progress to date on key strategic initiatives" to be puffery); *Glen Holly Ent., Inc. v. Tektronix, Inc.* 352 F.3d 367, 379 (9th Cir. 2003) ("[S]tatements—generally describing the 'high priority' Tektronix placed on product development and alluding to marketing efforts—do not state an actionable fraud . . . claim"); *In re Syntex Corp. Sec. Litig.,* 855 F. Supp. 1086, 1095 (N.D. Cal. 1994)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-05263-MWF-RZ                    Date:  April 12, 2016

Title:      Edward Todd -*v*- STAAR Surgical Company, et al.

(holding as non-actionable puffing the phrases "'we're doing well and I think we have a great future'" and "'business will be good this year'").  Accordingly, reasonable investors would be expected to rely on STAAR's alleged misrepresentations in their decision to purchase the Company's securities.

### 3.   *Statements of Opinion*

Defendants take issue with the statement "[STAAR] believes it is substantially in compliance with the FDA's [regulations]," arguing that it constitutes an inactionable opinion.  (Motion at 12).  But as the Supreme Court recently noted, "a reasonable investor may, depending on the circumstances, understand an opinion statement to convey facts about how the speaker has formed the opinion—or, otherwise put, about the speaker's basis for holding that view."  *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1328 (2015).  Indeed, *Omnicare* addressed this precise situation, stating,

> Consider an unadorned statement of opinion about legal compliance: "We believe our conduct is lawful." . . . [I]f the issuer made the statement . . . with knowledge that the Federal Government was taking the opposite view, the investor again has cause to complain.

*Id.*  Simply inserting the word "believe" in front of a statement of fact does not, therefore, immunize Defendants from liability.  A reasonable investor presented with STAAR's representation would justifiably feel misled if STAAR failed to mention that the FDA observed numerous violations of its regulations during a month-long inspection.  STAAR's statement of belief is therefore actionable.

Defendants challenge the Court's conclusion on two grounds:

*First*, Defendants distinguish *Omnicare* because it involved claims under Section 11 of the Securities Act, which—unlike Section 10(b) claims here—do not require a showing of scienter.  (Reply at 11).  But the issue of scienter is separate

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-05263-MWF-RZ                    Date:  April 12, 2016

Title:       Edward Todd -*v*- STAAR Surgical Company, et al.

from whether the statements in question are misleading.  Defendants' argument is more appropriately addressed with the Court's discussion of Defendants' alleged knowledge and intent to deceive.

     ***Second***, Defendants claim that the statement of opinion was not based on false facts when made.  (*Id.* at 8).  Defendants point out that "the Form 483 disclosing FDA's observations of possible deficiencies at the Monrovia facility was not provided to STAAR until March 21, 2014, ***after*** the representations at issue."  (*Id.* (emphasis in original)).  While that is undoubtedly so, the FDA inspectors identified violations of the regulations both in August 2013 (at the Switzerland facility) and February 2014 (at the California facility)—***before*** the optimistic announcement was made.  It was not necessary to wait for the official Form 483 to realize that FDA inspectors observed violations of FDA regulations.  The SAC successfully alleges, therefore, that the statement of opinion was based on false facts.

     Defendants retort that the SAC is simply wrong that STAAR violated FDA rules by failing to produce the Design History Files.  (*Id.* at 10).  In Plaintiffs' view, "STAAR maintained the files at its Swiss facility and existing regulations did not require STAAR to maintain duplicate original Design History Files in multiple locations."  (*Id.*).  But whether the Design History Files were even in existence is question of fact that may not be resolved on this Motion.  While Defendants point out that the FDA's Warning Letter includes citations to "DHF," thus indicating that the files do exist, the Letter also states that "your firm's design plans that describe the design and development activities for the Visian ICL/MICL Lenses, prior to July 2005, do not exist, or could not be located by your firm."  (Declaration of Dan Marmalefsky ("Marmalefsky Decl."), Ex. K (Docket No. 96-2)).  But more fundamentally, it is simply irrelevant whether the FDA was correct in concluding that STAAR failed to "establish procedures for design controls, as required by 21 CFR § 820.30(a)" and was "unable to locate the design files for the Visian ICL/MICL."  (*Id.*).  Far more important is Defendants' alleged failure to disclose to its investors that the FDA ***did*** come to that conclusion, which could postpone approval of the much-anticipated TICL.

CIVIL MINUTES—GENERAL                                              17

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-05263-MWF-RZ                    Date:  April 12, 2016

Title:      Edward Todd -*v*- STAAR Surgical Company, et al.

        In response, Defendants argue that STAAR's belief of compliance was genuine
and not misleading because FDA observations prior to issuance of a Warning Letter do
not represent a final agency determination.  (Reply at 11-12).  But it is undisputed that
STAAR's business requires prompt FDA approval of its products, and any facts
indicating delay of such approval are crucial to the investors.   FDA observations may
not constitute a "final agency determination" but they certainly represent a risk that the
investigated company is violating FDA regulations that would postpone any pending
approval applications.  As *STAAR I* explained, "[W]hile Defendants note that the Form
483 did not represent a final FDA determination regarding STAAR's compliance, the
nature of those problems . . . raises a strong inference that STAAR had actual
knowledge that these problems could delay or jeopardize the ICL's approval."  388 F.
Supp. 2d 1130; *see In re SFBC Int'l, Inc. Sec. & Derivative Litig.*, 495 F. Supp. 2d 477,
481, n.2 (D.N.J. 2007) ("While the observations contained in a Form 483 report do not
constitute a final agency determination regarding the facility's compliance with
applicable laws and regulations, corrective action by the inspected company is
expected.").  The Court agrees with this analysis—STAAR's opinion that it
substantially complied with FDA regulations is misleading without disclosure of FDA
observations to the contrary.

        **4.    *True Statements***

        Defendants also contend that some statements at issue are "literally true."
(Motion at 13; Reply at 10).  Falling into that category are statements to STAAR's
investors that the FDA's independent panel had recommended approval of the TICL.
(Motion at 12-13).

        But as Lead Plaintiff rightly notes, the representations need not be false to be
actionable under Section 10(b).  (Opposition at 15).  Rather, they must only
"affirmatively create an impression of a state of affairs that differs in a material way
from the one that actually exists."  *Brody*, 280 F.3d at 1006; *Omnicare*, 135 S. Ct. at
1327 ("[T]he omission of a fact can make a statement of opinion . . . , even if literally
accurate, misleading to an ordinary investor.").  Here, STAAR's statements created an
impression that TILC was one step closer to reaching the market and that there would

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV-14-05263-MWF-RZ               Date: April 12, 2016

Title:      Edward Todd -*v*- STAAR Surgical Company, et al.

be no serious impediments to FDA approval. The impression was false, however, since the FDA had observed multiple violations of its regulations that could delay the selling and marking of the TICL in the United States.

>    5.    *PSLRA Safe Harbor*

Defendants further assert that Lead Plaintiff's statements are non-actionable forward-looking statements. (Motion at 14). Under the PSLRA's safe harbor, forward-looking statements are not actionable if either (1) they are identified as such and accompanied by meaningful cautionary language, or (2) the plaintiff fails to allege particularized facts demonstrating that the statements were made with actual knowledge of their falsity. 15 U.S.C. § 78u-5(c)(1); *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111-12 (9th Cir. 2010). Defendants argue that the relevant statements are "forward-looking statements [] accompanied by detailed, meaningful cautionary statements." (Motion at 14).

Defendants are mistaken that the representations at issue are "forward-looking statements." The SAC alleges an omission of historical facts that misled STAAR's investors. One court noted that "to the extent Plaintiffs [] challenge Defendants' alleged ***omission of present facts*** with respect to the challenged statements, the PSLRA's safe harbor does not apply." *Mallen v. Alphatec Holdings, Inc.*, 861 F. Supp. 2d 1111, 1126 (S.D. Cal. 2012) (emphasis added) (concluding that defendants' statements that the company had "already begun to realize synergies from the Scient'x acquisition" and "we anticipate that our revenues throughout the balance of 2010 will continue to grow" were not protected by the PSLRA safe harbor for "forward-looking" statements, but dismissing the action on other grounds). "The fact that defendants used those inadequately disclosed historical facts to support unsound projections does not shield their alleged misrepresentations as forward-looking statements." *In re CV Therapeutics, Inc.*, No. 03-03709 SI, 2004 WL 1753251, at *10 (N.D. Cal. Aug. 5, 2004).

By a way of example, the statement "[STAAR] believes that it is substantially in compliance with the FDA's [regulations]" is not concerned with future projections or

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-05263-MWF-RZ                    Date:  April 12, 2016
Title:      Edward Todd -*v*- STAAR Surgical Company, et al.

predictions but is stating a belief regarding a then-existing fact.  An investor exposed to such an announcement would reasonably conclude that STAAR's activities were not violating FDA rules at that point in time, and a warning about possible future noncompliance would do little to protect the investor.  The statement "consolidation efforts are proceeding according to plans" is similarly based on allegedly misleading historical facts.  The consolidation, according to the SAC, was not proceeding according to plans since it was resulting in violations of FDA regulations.  STAAR is not entitled to safe harbor for such representations.  *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 930 F. Supp. 68, 72 (S.D.N.Y. 1996) ("[C]autionary language does not protect material misrepresentations or omissions when defendants knew they were false when made.").

### 6.    *Disclosure of the Warning Letter*

Even if Defendants did not view the statements as misleading at the time they made them, they arguably knew that their representations would deceive reasonable investors when the FDA issued its Warning Letter.  The Warning Letter made clear that "a premarket approval application for Class III devices to which [the regulations] are reasonably related will not be approved until the violations have been corrected." (SAC ¶ 131).  Since the Warning Letter was based on the observations made in February 2014, STAAR should have realized that its announcements subsequent to the FDA investigation were misleading when made.

The SAC therefore sufficiently alleges that Defendants should have disclosed the Warning Letter to dispel the investors' expectations of forthcoming approval.  *See, e.g., Coble v. Broadvision Inc.*, 2011 WL 31093589, at *7 (N.D. Cal. Sept. 11, 2002) ("A duty to disclose may arise when a company makes a statement that it believes is true but later discovers that the statement was untrue or misleading when the statement was made.").  Defendants retort that STAAR "was permitted to withhold disclosure for a 'reasonable time'" to investigate the cited deficiencies.  (Motion at 20-21).  But even if STAAR's subsequent investigation established that the FDA was wrong and that the company committed no violations, the Letter should still have been disclosed since it directly impacted the timing of STAAR's application for TICL approval.  While

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-05263-MWF-RZ                    Date:  April 12, 2016

Title:      Edward Todd -*v*- STAAR Surgical Company, et al.

STAAR did not have to disclose the Warning Letter within seconds of receipt, STAAR provides no support that it was free to delay as along as it did.

### 7.   *Section 10(b) Claim as to Defendant Santos*

Defendants urge the Court to dismiss the claims as to Defendant Santos because Lead Plaintiff "fails to allege that Mr. Santos made ***any*** statements."  (Motion at 6 (emphasis in original)).  Courts have recognized, however, that "corporate documents that have no stated author or statements within documents not attributed to any individual may be charged to one or more corporate officers provided specific factual allegations link the individual to the statement at issue."  *Oklahoma Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328, 1355 (C.D. Cal. 2014) (quoting *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 365 (5th Cir. 2004)).  The allegations connecting an officer to a statement include "allegations explaining the individual's involvement in the formulation of either the entire document, or that specific portion of the document, containing the statement."  *Id.*  In *IXIA*, the district court rejected Section 10(b) claims against individual corporate defendants because the allegations established only that the officers "possessed the authority to control the contents of the reports; received copies of them; and because of their positions within Ixia knew that the adverse facts specified in the complaint had not been disclosed."  *Id.* at 1355-56 (internal quotation marks omitted).

The allegations here, on the other hand, are more detailed.  The SAC claims that Defendant Santos "has served as the Company's Vice President, Global Quality Assurance, Regulatory and Clinical Affairs since November 2008."  (SAC ¶ 27).  "As V.P. of Regulatory Affairs, Santos was consulted and responsible for any statements concerning FDA regulatory compliance."  (*Id.*).  Defendant Santos, moreover, served as "the FDA's point of contact at the Company and the person responsible for responding to the FDA's requests for information and documents during inspection." (*Id.* ¶ 99).

It is admittedly a close call whether these allegations are sufficient to establish that Defendant Santos participated in the formulation of the statements at issue.  The

_____

CIVIL MINUTES—GENERAL                                          21

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-05263-MWF-RZ                Date:  April 12, 2016

Title:      Edward Todd -*v*- STAAR Surgical Company, et al.

Court ultimately concludes, however, that the SAC adequately states a claim against Defendant Santos due his unique role as liaison between the FDA and STAAR.  Such facts support the allegation that Defendant Santos is "responsible for any statements concerning FDA regulatory compliance."  As the company's officer responsible for overseeing compliance with FDA rules, it is reasonable to infer that the statements at issue were initially made by Defendant Santos or at least with his advice and consent. The Court is thus not prepared to dismiss Defendant Santos at this juncture.

## B.   Scienter

In addition to falsity, the PSLRA requires that a complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u–4(b)(2)(A).  To satisfy the requisite state of mind element, "a complaint must allege that the defendant[] made false or misleading statements either intentionally or with deliberate recklessness."  *Zucco*, 552 F.3d at 991.

In *Tellabs*, the Supreme Court clarified the inquiry for determining whether a plaintiff's allegations are sufficient to establish scienter.  551 U.S. at 321.  Accepting all factual allegations in the complaint as true, a district court must "consider the complaint in its entirety," and determine "whether ***all*** of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."  *Id.* at 322–23 (emphasis in original).  Under the *Tellabs* analysis, "[a] complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Id.* at 324.  "A defendant corporation is deemed to have the requisite scienter for fraud only if the individual corporate officer making the statement has the requisite level of scienter, *i.e.*, knows that the statement is false, or is at least deliberately reckless as to its falsity, at the time that he or she makes the statement."  *In re Apple Comp., Inc. Sec. Litig.*, 243 F. Supp. 2d 1012, 1023 (N.D. Cal. 2002).  In this case, the relevant corporate officers are Defendants Caldwell and Santos.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-05263-MWF-RZ                    Date:  April 12, 2016
Title:     Edward Todd -*v*- STAAR Surgical Company, et al.

At the hearing, Defendants argued emphatically that Defendants Caldwell and Santos could not have acted with scienter because the FDA had not issued the Form 483 and the Warning Letter at the time they made most of the alleged misstatements. But neither a Form 483 nor a Warning Letter is necessary to impute knowledge of the violations observed during an FDA inspection.  The SAC alleges sufficient facts to infer that Defendants Caldwell and Santos—individuals well-versed in FDA procedures (SAC ¶¶ 26-27)—were aware of the adverse observations in February 2014, well before any of the announcements at issue were made.  To be more specific, the following allegations create an inference of scienter at least as compelling as an inference of innocent conduct:

- After the August 2013 inspection of the Swiss facility, the FDA provided "management" with a Form 483.  (SAC ¶ 92).  Form 483s are "intended for use in notifying the inspected establishment's ***top management*** in writing of significant objectionable conditions . . . ."  (*Id.* ¶ 62 (emphasis added)).  Management failed to correct a deficiency identified in the Form 483, which appeared again during the inspection of STAAR's California facility in February 2014, after manufacturing had been transferred from Switzerland.  (*Id.* ¶ 96).

- During the February 2014 inspection of the California facility, the FDA inspector made numerous requests for the Design History File, which "management" failed to produce.  Defendant Santos, who reported directly to senior management, was the person responsible for maintaining the Design History Files.  (*Id.* ¶¶ 98-99).  The Warning Letter itself recognized that the "firm's management" informed the investigator that it was "unable to locate the design files."  (Marmalefsky Decl., Ex. K).  Defendant Santos reported to senior management.  (SAC ¶ 146).

- The FDA inspector discussed other violations with "multiple firm management."  (*Id.* ¶ 100).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-05263-MWF-RZ                    Date:  April 12, 2016
Title:        Edward Todd -*v*- STAAR Surgical Company, et al.

- "[T]he FDA had been inspecting the Monrovia facility since February 10, 2014 and had repeatedly alerted ***management*** to severe violations of cGMP and Quality System Regulations relating to ICL/MILC."  (*Id.* ¶ 93 (emphasis added)).

- Pursuant to FDA policy, inspectors "make every reasonable effort to discuss all observations with the ***management of the establishment*** . . . on a daily basis."  (*Id.* ¶ 61 (emphasis added)).

- Defendant Caldwell has a "long history managing FDA regulated companies that manufacture and market ophthalmology products, Caldwell has a comprehensive understanding of FDA procedures specific to STAAR's industry."  (*Id.* ¶ 26).

These allegations show that Defendants Santos and Caldwell were more likely than not aware of the problems identified during the February inspection before the issuance of Form 483 in March 23, 2014 and the Warning Letter on May 21, 2014.  It is reasonable to infer that the FDA inspector's communications with "management" either were conducted directly with Defendants Santos and Caldwell or were at least reported to them.  A trier of fact could conclude that Defendant Santos and Caldwell acted with scienter when they made the allegedly misleading statements on March 12-17, 2014.

The inference of scienter is further bolstered by the importance of both the TICL and the smooth operation of the California facility to STAAR's business.  The SAC alleges that "[a]pproval of TICL in the U.S. was of the utmost importance to STAAR. . . . In the foreign markets in which the MICL and TICL were in commercial use approximately 40% of the units and approximately 50% of the revenue were the TICL version."  (*Id.* ¶ 79).  It is reasonable to infer that the CEO of STAAR (a relatively small company with only 335 employees) would be involved closely in ensuring compliance with FDA regulations, especially where any violations could postpone the approval of TICL.  The Ninth Circuit has recognized that such circumstances permit

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-05263-MWF-RZ                    Date:  April 12, 2016
Title:       Edward Todd -v- STAAR Surgical Company, et al.

inference of scienter.  *See Reese v. Malone*, 747 F.3d 557, 576 (9th Cir. 2014) (holding that inference of scienter is proper "where the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter").

STAAR's alleged history of noncompliance further supports the inference that Defendants Caldwell and Santos kept a close watch on possible violations of FDA regulations.  After significant damage to STAAR's stock from the December 2003 Warning Letter and subsequent lawsuit (*see id.* ¶ 70), it would be reasonable for STAAR's top management to closely monitor any possible violations of FDA regulations, particularly after consolidating all manufacturing operations into one facility.  While Defendants point out that most of that history pre-dates Defendant Caldwell's arrival, his SEC filings show a deep awareness of the regulatory issues (*id.* ¶¶ 86-90), thus making it reasonable that Defendant Caldwell at least reviewed the Company's past violations of FDA regulations.

Finally, Defendants' failure to timely disclose the Form 483 and the Warning Letter creates a further inference of intentional deceit.  At that time, Defendants knew the agency's position regarding STAAR's noncompliance with FDA regulations.  Defendants nonetheless failed to disclose any relevant facts to the investors who were under the impression that the FDA would approve the TICL without serious impediments.  While it is of course true that the FDA would have disclosed the Warning Letter independent of STAAR's actions, Defendants silence in light of their prior statements is telling.

Defendants retort that even if they were aware of the investigator's observations in February 2014, Lead Plaintiff fails to allege that Defendant Caldwell "knew that a Warning Letter was imminent, what it would say and that it would be material." (Motion at 23).  *STAAR I* addressed a similar argument as follows:

> Defendants claim that Plaintiffs must show Defendants
> "knew that the FDA would find STAAR's September 29,
> 2003 written response inadequate, knew that the FDA would

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.** **CV-14-05263-MWF-RZ**          **Date:  April 12, 2016**
Title:      Edward Todd -*v*- STAAR Surgical Company, et al.

> ultimately issue a Warning Letter, and knew that the Warning
> Letter would state that the FDA would not approve any new
> STAAR devices until STAAR's 'quality system' deficiencies
> were corrected."  However, Defendants attempt to raise the
> standard for scienter far beyond what is required by the
> PSLRA.  Although the PSLRA was enacted to end the
> practice of pleading "fraud by hindsight," the PSLRA does
> not require that Plaintiffs show that Defendants were capable
> of predicting the future.

388 F. Supp. 2d at 1130.  The Court agrees with the district court's analysis.
Knowledge of FDA observations alone may raise an inference of scienter since such
observations produce a sufficiently great possibility of a future Warning Letter.  If
Lead Plaintiff were required to allege that Defendants "knew a Warning Letter was
imminent," then it would be virtually impossible to establish scienter at the pleading
stage.

In sum, the SAC creates a strong inference that Defendants understood at the
time the statements in question were made that the FDA had unearthed violations of its
regulations.  Defendants nonetheless misled STAAR's investors into believing that the
company was in compliance with the law.  Such conduct gives rise to an inference of
scienter.

### C.      <u>Section 20(a) Claim</u>

Since the SAC establishes a primary violation, Defendants' argument against the
Section 20(a) claim for control person liability is unavailing.  *See Zucco*, 552 F.3d at
990.

### III.      <u>CONCLUSION</u>

The Motion is **DENIED**.  Defendants shall answer the Second Amended
Complaint by **May 2, 2016**.  **IT IS SO ORDERED.**