**POMERANTZ  LLP**
Marc I. Gross
Michael J. Wernke
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: migross@pomlaw.com
          mjwernke@pomlaw.com
***Lead Counsel for Lead Plaintiff and the Class***

**GLANCY PRONGAY & MURRAY LLP**
LIONEL Z. GLANCY (#134180)
ROBERT V. PRONGAY (#270796)
KEVIN RUF (#136901)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
E-mail: info@glancylaw.com
***Liaison Counsel for Lead Plaintiff***

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD TODD, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>        vs.<br><br>STAAR SURGICAL COMPANY, BARRY G. CALDWELL, and JOHN SANTOS<br><br>                    Defendants. | Case No: 2:14-CV-05263-MWF-GJS<br><br>**CLASS COUNSEL'S NOTICE OF MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>Judge: Hon. Michael W. Fitzgerald<br>Courtroom:  5A<br>Date: October 16, 2017<br>Time: 11:30 a.m. |

## NOTICE OF MOTION FOR APPROVAL OF
## ATTORNEYS' FEES AND EXPENSES

PLEASE TAKE NOTICE that at 11:30 a.m. on October 16, 2017, or as soon thereafter as counsel may be heard, before the Honorable Michael W. Fitzgerald, in the United States District   Court for the Central District of California, 350 West First Street, Los Angeles, California 90012, Lead Plaintiff and Class Representative Edward Todd ("Lead Plaintiff" or "Plaintiff") hereby will move for an order awarding attorneys' fees, authorizing reimbursement of expenses for Class Counsel, and reimbursement of costs and expenses of Plaintiff.

The grounds for this motion are that the requested award of fees and expenses to Class Counsel are warranted under the fee-setting and expense reimbursement criteria applicable to common fund and Private Securities Litigation Reform Act ("PSLRA") cases.

This motion is supported by the accompanying Memorandum of Points and Authorities; the Declaration of Michael J. Wernke in Support of Lead Plaintiff's Motion for Final Approval of the Proposed Class Action Settlement and Plan of Allocation, and Motion for Approval of Attorneys' Fees and Expenses ("Wernke Declaration"); and the exhibits filed therewith.

Class Counsel is unaware of any opposition to this Motion. Pursuant to the Preliminary Approval Order, any objection to Class Counsel's request for an award of attorneys' fees and reimbursement of Litigation Expenses or award to Lead Plaintiff must be filed on or before September 25, 2017. To date, no objections have been filed.

## **STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether consideration of the relevant factors justifies a fee award of 25% of the Gross Settlement Fund.

2.      Whether Class Counsels' expenses were reasonable and necessarily incurred to achieve the benefit obtained.

3.      Whether Plaintiff Edward Todd is entitled to an incentive award in the amount of $10,000.

ii

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................1

II.   SPECIFIC EFFORTS OF PLAINTIFFS' COUNSEL...................................4

III.  REASONABLE PERCENTAGE OF THE "COMMON
      FUND" RECOVERED IS AN APPROPRIATE APPROACH
      TO AWARDING ATTORNEYS' FEES.....................................................5

      A.    The Common Fund Doctrine ...............................................5

      B.    The Percentage-of-Fund Approach.......................................6

      C.    Courts In This Circuit Have Often Awarded 25% Or More Of
            The Common Fund As A Reasonable Fee............................7

IV.   A BENCHMARK AWARD OF 25% OF THE SETTLEMENT FUND
      IS REASONABLE IN THIS CASE ...........................................................9

      A.    Plaintiffs' Counsel Achieved An Excellent Result For The
            Settlement Class...................................................................9

      B.    The Risks Of The Litigation ...............................................11

      C.    The Skill Required And The Quality And Efficiency Of The
            Work...................................................................................15

      D.    The Contingent Nature Of The Case And The Financial
            Burden Carried By  The Plaintiffs' Counsel......................17

      E.    The Customary Fee .............................................................18

      F.    A Lodestar Cross-Check Shows the Fee Request Is Reasonable ......19

iii

G.     The Reaction Of The Settlement Class Supports The
       Requested Award ....................................................................................20

V.   PLAINTIFF'S COUNSEL'S EXPENSES ARE REASONABLE
     AND WERE NECESSARY TO ACHIEVE THE BENEFIT
     OBTAINED...................................................................................................21

VI.  THE AWARD TO LEAD PLAINTIFF SHOULD BE APPROVED .........23

VII.  CONCLUSION .............................................................................................25

iv

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aarons v. BMW of N. Am., LLC*,
  2014 WL 4090564 (C.D. Cal. Apr. 29, 2014)....................................................14

*Abrams v. Lightolier Inc.*,
  50 F.3d 1204 (3d Cir. 1995) ..............................................................................22

*Arenson v. Bd. of Trade*,
  372 F. Supp. 1349 (N.D. Ill. 1974)....................................................................17

*Blum v. Stevenson*,
  465 U.S. 886 (1984) ....................................................................................6, 18

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*,
  8 F.3d 722 (10th Cir. 1993) ..............................................................................21

*Buccellato v. AT&T Operations, Inc.*,
  2011 WL 4526673 (N.D. Cal. June 30, 2011) ..................................................24

*Central Railroad. & Banking Co. of Ga. v. Pettus*,
  113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885) ................................................6

*Cullen v. Whitman Medical Corp.*,
  197 F.R.D. 136 (E.D. Pa. 2000) ........................................................................19

*Dyer v. Wells Fargo Bank, N.A.*,
  303 F.R.D. 326 (N.D. Cal. 2014) ......................................................................20

*Eltman v. Grandma Lee's Inc.*,
  1986 WL 53400 (E.D.N.Y. May 28, 1986)........................................................15

*Fischel v. Equitable Life Assur.*,
  307 F.3d 997 (9th Cir. 2002)..............................................................................19

v

*Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    741 F. Supp. 84 (S.D.N.Y. 1990) ..................................................................23

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) .............................................................21, 22, 23

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ........................................................................................10

*In re Activision Sec. Litig.*,
    723 F. Supp. 1373 (N.D. Cal. 1989) ........................................................7, 8

*In re Am. Apparel, Inc. S'holder Litig.*,
    2014 WL 10212865 (C.D. Cal. July 28, 2014) ........................................13

*In re Am. Bank Note Holographics, Inc.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ......................................................12

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ........................................................................9

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d. Cir. 2001) ......................................................................11

*In re Cendant Corp. Sec. Litig.*,
    404 F.3d 173 (3d Cir. 2005) ..........................................................................7

*In re Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ........................................................................7

*In re Crazy Eddie Sec. Litig.*,
    824 F. Supp. 320 (E.D.N.Y. 1993) ............................................................19

*In re Equity Funding Corp. Sec. Litig.*,
    438 F. Supp. 1303 (C.D. Cal. 1977) ..........................................................17

*In re Giant Interatice Grp., Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) ................................................................24

vi

*In re Heritage Bond Litig.*,
   2005 WL 1594389 (C.D. Cal. June 10, 2005)...................................................11

*In re Immune Response Sec. Litig.*,
   497 F.Supp.2d 1166 (S.D. Cal. 2007) ...........................................12, 21, 22, 23

*In re King Res. Co. Sec. Litig.*,
   420 F. Supp. 610 (D. Colo. 1976) ....................................................................10, 17

*In re Linerboard Antitrust Litig.*,
   2004 WL 1221350 (E.D. Pa. June 2, 2004) ........................................................19

*In re M.D.C. Holdings Sec. Litig.*,
   1990 WL 454747 (S.D. Cal. 1990) ......................................................................18

*In re McDonnell Douglas Equip. Leasing Sec. Litig.*,
   842 F. Supp. 733 (S.D.N.Y. 1994) .................................................................22, 23

*In re Medical X-Ray Film Antitrust Litig.*,
   1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) .........................................................19

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ...............................................................................8

*In re Mercury Interactive Corp. Sec. Litig.*,
   2011 WL 826797 (N.D. Cal. Mar. 3, 2011) ........................................................20

*In re Nuvelo, Inc. Sec. Litig.*,
   2011 WL 2650592 (N.D. Cal. July 6, 2011) .......................................................17

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .........................................11, 12, 15, 20

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) .................................................................................8

*In re Pfizer Inc. Sec. Litig.*,
   2014 WL 3291230 (S.D.N.Y. July 8, 2014) .......................................................13

vii

*In re Ravisent Sec. Litig.*,
2005 WL 906361 (E.D. Pa. April 18, 2005) ....................................................19

*In re Safety Components*,
166 F. Supp.2d 72 (D.N.J. 2001)........................................................................19

*In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*,
724 F. Supp. 160 (S.D.N.Y. 1989) ......................................................................7

*In re UnitedHealth Group Inc. Shareholder Deriv. Litig.*,
631 F.3d 913 (8th Cir. 2011) ............................................................................22

*In re Veritas Software Corp. Sec. Litig.*,
396 Fed. App'x 815 (3d Cir. 2010) ...................................................................24

*In re Warner Comm. Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985) ....................................................................14

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ...........................................................6, 9, 12, 17

*In re Xcel Energy, Inc., Sec., Deriv. & ERISA Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005) ...............................................................24

*Kirchoff v. Flynn*,
786 F.2d 320 (7th Cir. 1986).......................................................................7, 18

*Miltland Raleigh-Durham v. Myers*,
840 F. Supp. 235 (S.D.N.Y. 1993) ....................................................................22

*Morris v. Lifescan, Inc.*,
54 Fed. App. 663, 664 (9th Cir. 2003) ........................................................8, 10

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989) ....................................................................5, 6, 8

*Powers v. Eichen*,
229 F.3d 1249 (9th Cir. 2000)............................................................................8

viii

*Ratner v. Bennett*,
   1996 WL 243645 (E.D. Pa. May 8, 1996) ........................................................9

*Roberti v. OSI Sys., Inc.*,
   2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) ...................................................20

*Schulte v. Fifth Third Bank*,
   2011 WL 3269340 (N.D. Ill. July 29, 2011) ....................................................9

*Six Mexican Workers v. Arizona Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990)................................................................6, 10

*Steiner*,
   248 Fed. App'x at 783 ...................................................................................20

*Steinfeld v. Discover Fin. Servs.*,
   2014 WL1309692 (N.D. Cal. Mar. 31, 2014) .................................................20

*Thornberry v. Delta Air Lines*,
   676 F.2d 1240 (9th Cir. 1982),
   *vacated on other grounds*, 461 U.S. 952 (1983) ...........................................22

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ...........................................................................6

*Vincent v. Hughes Air West, Inc.*,
   557 F.2d 759 (9th Cir. 1977) ..........................................................................5

*Vinh Nguyen v. Radient Pharm.*,
   2014 WL 1802293 (C.D. Cal. May 6, 2014)...................................................12

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002)................................................................19, 20

*Waters v. Int'l Precious Metals Corp.*,
   190 F.3d 1291 (11th Cir. 1999) ......................................................................9

ix

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff through his undersigned counsel ("Class Counsel"), submit this memorandum of law in support of his Motion, pursuant to Federal Rule of Civil Procedure 23(e), for an Order: (1) awarding attorneys' fees of 25% of the Gross Settlement Fund, or $1,750,000, and an award to Lead Plaintiff totaling $10,000; and (2) reimbursement of $216,239.71 in expenses that were incurred in prosecuting this Action (the "Fee Petition").

## I.    INTRODUCTION[1]

The efforts of Plaintiff's Counsel, as described more fully in the Declaration of Michael J. Wernke filed herewith ("Wernke Decl."), have achieved a substantial settlement consisting of a $7 million cash payment. Plaintiff's Counsel requests an award of fees in the amount 25% of the Gross Settlement Fund or $1,750,000 and an award of $10,000 to Lead Plaintiff. Plaintiff's Counsel also request reimbursement from the Gross Settlement Fund of $216,239.71 in expenses incurred.

The Settlement represents approximately 20% of Lead Plaintiff's best case estimate of damages for the Settlement Class. It is an excellent result, which is significantly higher than the 7.3% median settlement recovery as a percentage of estimated damages in securities class actions in 2016 where estimated damages were less than $50 million. *See* Cornerstone Research, "Securities Class Action Settlements: 2016 Review and Analysis," at p. 8, Figure 7, *available at* https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Filings-2016-YIR.

---

[1]    Unless otherwise defined, capitalized terms herein have the same meanings attributed to them in the Stipulation and Agreement of Settlement dated June 20, 2017. ECF No. 170-2.

1

Throughout the litigation, the stakes have been large, the risks substantial, and the battles hard-fought. This recovery is the product of vigorous negotiations over many months. Indeed, the Parties were at an impasse until a Mediator's Recommendation was proposed by mediator Michelle Yoshida, Esq. to resolve the case for $7 million.

As Detailed in the accompanying Wernke Declaration, Class Counsel vigorously pursued this litigation. Among other things, Class Counsel conducted a comprehensive investigation to prepare the Complaint, including review and analysis of STAAR's public SEC filings; research and other reports by securities and financial analysts covering STAAR; STAAR press releases and other public statements made by or about Defendants; news articles and other media reports about STAAR; transcripts of STAAR earnings calls and investor and industry conferences; and pricing, trading, and other data concerning STAAR common stock. *See* Wernke Decl. ¶¶ 16-18, 55-56, 103.

Class Counsel also identified and interviewed numerous percipient witnesses. Class Counsel successfully opposed Defendants' motion to dismiss, successfully obtained class certification; engaged and consulted with experts in several areas requiring specialized knowledge; researched the law applicable to the claims and potential defenses; pursued extensive discovery (including the review of approximately 360,000 pages of documents produced by Defendants and third-parties); engaged in a thorough mediation with experienced defense counsel and successfully negotiated a favorable settlement. *See id.* ¶¶ 21-59, 103.

Given the substantial recovery obtained for the Class, the complexity and amount of work involved, the skill and expertise required, and the significant risks that Class Counsel undertook, the requested award of 25% of the Settlement Amount is fair and reasonable. It is equal to the Ninth Circuit's 25% "benchmark," and consistent with, or less than, fee awards in other similar cases.

The fairness and reasonableness is confirmed when cross-checked with Plaintiff's Counsel's lodestar. Plaintiff's Counsel spent a total of 2,449.60 hours of professional time having a market value of approximately $1,654,692.25 in prosecuting this litigation, and results in a multiplier of 1.06—which is low compared to multipliers approved by courts in this Circuit. Moreover, Lead Plaintiff has reviewed and endorsed the fairness and reasonableness of the requested fee. *See* Declaration of Edward Todd ("Todd Decl." or "Lead Plaintiff Decl."), attached as Exhibit 1 to the Wernke Decl.

The reaction of the Class also strongly supports the requested fees and expenses.  The deadline to file objections and to request exclusion to the Settlement is September 25, 2017.  To date, no objections or requests for exclusion have been received.  Declaration of Jose C. Fraga Re Mailing of the Short-Form Notice and Publication of the Summary Notice, attached as Ex. 1 to the Wernke Decl. ("GCG Decl.") ¶¶ 13-14.  Pursuant to the Preliminary Approval Order, over 8,759 Short-Form Notices were mailed to Class Members. *See* GCG Decl., ¶ 7.  The Short-Form Notice advised Class Members that Plaintiff's Counsel intended to apply to the Court for an award of attorneys' fees representing up to 25% of the Gross Settlement Fund, and that Plaintiff's Counsel would seek reimbursement of Plaintiff's Counsel's out-of-pocket expenses not to exceed $350,000.  *E.g.*, GCG Decl., Ex. A.

The Settlement could not have been achieved but for Lead Plaintiff's and Plaintiff's Counsel's persistent and extensive litigation of this matter. While the Parties engaged in an in-person mediation session and frequent additional settlement negotiations, the amounts initially offered by Defendants were significantly lower than the Settlement Amount, which was proposed by Ms. Yoshida and ultimately accepted. Wernke Decl. ¶¶ 60-67.

3

For the reasons set forth more fully below, Plaintiff's Counsel respectfully submit that such attorneys' fees and expenses are fair and reasonable under applicable legal standards and in light of the contingency risk undertaken, and should be awarded by the Court.

## II.   SPECIFIC EFFORTS OF PLAINTIFFS' COUNSEL

This brief description of the Action reveals not only the complexities of the case, but also the host of factual and legal issues that Plaintiff's Counsel had to convincingly address in order to achieve the Settlement. As explained in the Wernke Declaration (¶¶ 15-67, 103), the substantial work performed by Plaintiff's Counsel included the following:

- thoroughly reviewed and analyzed thousands of pages of publicly available information and documents regarding STAAR including, but not limited to, its SEC filings, financial statements, press releases, conference call transcripts, analysts' reports, media coverage, and trading data;
- identified numerous potential witnesses and conducted detailed investigative interviews of witnesses;
- consulted with and retained an experts relating to FDA regulations and compliance, damages, loss causation, and market efficiency;
- drafted and filed a comprehensive consolidated complaint that would satisfy the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which was amended as additional information concerning the alleged fraud was discovered;
- successfully opposed Defendants' motions to dismiss the complaint and disqualify Plaintiff's Counsel;
- successfully moved for class certification;

- served and responded to discovery requests, including the review of 357,713 pages of documents produced in discovery, and notice and prepared for depositions of STAAR's current and former employees;
- engaged in frequent settlement negotiations throughout the litigation, including an all-day mediation sessions with Michelle Yoshida, Esq.;
- drafted mediation statements and supporting submissions and exhibits;
- negotiated and drafted the Stipulation of Settlement, notices to Class Members, and motion for preliminary approval and supporting papers;

Plaintiff's Counsel's effort to successfully resolve this Action has been without compensation of any kind, and payment of attorneys' fees and reimbursement of expenses were, and always have been, wholly contingent upon the result achieved. *Id*. ¶¶ 107-108.

As compensation for these efforts, Class Counsel requests that this Court award attorneys' fees of 25% of the Gross Settlement Fund ($1,750,000) plus $216,239.71 in unreimbursed expenses. Plaintiff's Counsel's 25% fee request is not only consistent with a great number of decisions, both in this Circuit and across the country, but is appropriate compensation for the result Plaintiff's Counsel has obtained for the Class.

## III. REASONABLE PERCENTAGE OF THE "COMMON FUND" RECOVERED IS AN APPROPRIATE APPROACH TO AWARDING ATTORNEYS' FEES

### A. The Common Fund Doctrine

It has long been recognized that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).  In *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir.

1989) ("*Paul, Johnson*"), the Ninth Circuit explained the equitable principle underlying such fee awards:

> Since the Supreme Court's 1885 decision in *Central Railroad. & Banking Co. of Ga. v. Pettus,* 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885), it is well settled that the lawyer who creates a common fund is allowed an *extra* reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit. [...] The amount of such a reward is that which is deemed "reasonable" under the circumstances.

(Emphasis in original; citations omitted). The purpose of this "common fund" doctrine is to avoid unjust enrichment, requiring "those who benefit from the creation of the fund [to] share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").

## B.    The Percentage-of-Fund Approach

In *Blum v. Stevenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court recognized that under the common fund doctrine a "reasonable" fee may be based "on a percentage of the fund bestowed on the class." In *Paul, Johnson*, 886 F.2d 268, *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990), and *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993), the Ninth Circuit expressly approved the use of the percentage-of-recovery method in common fund cases.

Since *Paul, Johnson* and its progeny, district courts in this Circuit have almost uniformly shifted to the percentage method in awarding fees in representative actions. There are compelling reasons why so many courts have opted for the percentage approach in common fund cases. First, it is consistent with the practice in the private marketplace where contingent fee attorneys are

6

customarily compensated by a percentage of the recovery.[2] Second, it more closely aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum possible recovery in the shortest amount of time required under the circumstances.[3] Third, use of the percentage-of-recovery method decreases the burden imposed on the court (by avoiding a detailed and time-consuming lodestar analysis), while assuring that the beneficiaries do not experience unnecessary delay in receiving their share of the settlement. *See In re Activision Secs. Litig.*, 723 F. Supp. at 1378-79.[4]

Indeed, the plain text of the PSLRA states that class counsel is entitled to attorneys' fees that represent a "reasonable percentage" of the damages recovered by the class. *See* 15 U.S.C. § 78u-4(a)(6). *See In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n. 7 (3d Cir. 2005) ("[T]he PSLRA has made percentage-of-recovery the standard for determining whether attorney's fees are reasonable.").

## C. Courts In This Circuit Have Often Awarded 25% Or More Of The Common Fund As A Reasonable Fee

---

[2]  *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) ("The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client."); *In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989) (noting that in the marketplace, attorneys and their clients routinely negotiate 25% to 40% percentage fees).

[3]  *See Kirchoff v. Flynn*, 786 F.2d 320, 325-26 (7th Cir. 1986) ("The lawyer gains only to the extent his client gains[,] ....ensur[ing] a reasonable proportion between the recovery and the fees assessed to the defendant . . . . reward[ing] exceptional success . . . penaliz[ing] failure . . . [and] automatically handl[ing] compensation for the uncertainty of litigation.").

[4]  *See also In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989) ("straight contingent fee awards [are] bereft of largely judgmental and time-wasting computations of lodestars and multipliers").

7

In *Paul, Johnson*, 886 F.2d at 273, the Ninth Circuit originally established 25% of the fund recovered as the "benchmark" award to be adjusted upward or downward depending on the circumstances of the particular case. *Accord Powers v. Eichen*, 229 F.3d 1249, 1256-1257 (9th Cir. 2000); *but see Activision*, 723 F. Supp. at 1377 ("This court's review of recent reported cases discloses that nearly all common fund fee awards range around 30% even after thorough application of either the lodestar or twelve-factor method."). Indeed, it is not unusual for courts to award fees in excess of 30% in appropriate circumstances. *See, e.g., Morris v. Lifescan, Inc.*, 54 Fed. App. 663, 664 (9th Cir. 2003) (approving 33% fee); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (approving fee equal to 33% percent of a $12 million settlement fund); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (upheld fee award of 33.3% of $1.725 million settlement).[5]

---

[5] Courts in this and other jurisdictions routinely (and recently) award fees of 25% or more in similarly sized settlements. *E.g., In re Geron Corporation Securities Litigation*, 3:14-cv-01224-CRB (N.D. Cal. Jul. 21, 2017) (ECF No. 135) (awarding 25% of common fund in $6.25 million settlement); *In re Dynavax Tech. Corp. Securities Litigation*, No. 3:13-cv-02796-CRB (N.D. Cal. Feb. 10, 2017) (ECF No. 156) (awarding 25% of common fund in $4.5 million settlement); *In re IsoRay, Inc. Securities Litigation*, 4:15-cv-5046-LRS (E.D. Wash. Mar. 7, 2017) (ECF No. 97) (awarding 30% of common fund in $3,357,500 settlement); *Erickson v. Corinthian Colleges, Inc. et al.*, No. 2:13-cv-07466-GHK-PJW (C.D. Cal. Nov. 9, 2016) (ECF No. 117) (awarding 28% of common fund in $3.5 million settlement); *Loritz v. Exide Tech., et al.*, No. 2:13-cv-02607-SVW-E (C.D. Cal. Jul. 27, 2016) (ECF No. 247) (awarding 25% of common fund in $14.75 million settlement); *In re Cytrx Corp. Securities Litigation.*, No. 2:14-cv-01956-GHK-PJW (C.D. Cal. May 18, 2016) (ECF No. 162) (awarding 25% of common fund in $8.5 million settlement); *Sohal v. Yan et al*. No. 1:15-cv-00393-DAP (N.D. Ohio Aug. 1, 2017) (ECF No. 94) (awarding 25% of common fund in $7.175 million settlement); *In re KBR, Inc. Securities Litigation*, No. 4:14-cv-01287 (S.D. Tex. Aug. 25, 2017) (ECF No. 154) (awarding 25% of common fund

The guiding principle remains that a fee award should be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1296 (citation omitted). The attorneys' fee requested here is in line with the Ninth Circuit benchmark, and is well within the range of percentages courts in this Circuit have awarded in similar securities class action settlements.

## IV. A BENCHMARK AWARD OF 25% OF THE SETTLEMENT FUND IS REASONABLE IN THIS CASE

### A. Plaintiffs' Counsel Achieved An Excellent Result For The Settlement Class

The Ninth Circuit has established 25% of the recovery as the benchmark fee award. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir.

---

in $10.5 million settlement); *Krystek v. Ruby Tuesday, Inc., et al.*, No. 3:14-cv-01119 (M.D. Tenn. Aug. 7, 2017) (ECF No. 117) (awarding 30% of common fund in $5 million settlement); *Beaver County Employees' Retirement Fund et al. v. Tile Shop Holdings, Inc., et al.*, No. 0:14-cv-00786-TNL (D. Minn. June 14, 2017) (ECF No. 415) (awarding 24% of common fund in $9.5 million settlement; *In re EZcorp, Inc., Securities Litigation.*, No. 1:14-cv-06834-ALC-AJP (S.D.N.Y. Apr. 26, 2017) (ECF No. 124) (awarding 25% of common fund in $5.9 million settlement); *KB Partners I, LP v. Pain Therapeutics, Inc.*, No. 1:11-cv-01034-SS (W.D. Tex. Dec. 16, 2016) (awarding 30% of common fund in $7.5 million settlement); *In re Doral Financial Corp. Securities Litigation*, No. 3:14-cv-01393-GAG-BJM (D. P.R. Aug. 8, 2016) (ECF No. 116) (awarding 30% of common fund in $7 million settlement); *Schulte v. Fifth Third Bank*, 2011 WL 3269340, at *31 (N.D. Ill. July 29, 2011) ("A number of fee awards in common-fund cases from within the Seventh Circuit show that an award of 33-1/3% of the settlement fund is within the reasonable range"; approving 33.3% of $9.5 million); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999) (one-third award of $40 million); *Ratner v. Bennett*, 1996 WL 243645 (E.D. Pa. May 8, 1996) (35% award in securities action of $400,000); *In re Select Comfort Corp. Secs. Litig.*, No. 99-884 (D. Minn. Feb. 28, 2003) (awarding 33.3% of the $5,750,000 settlement).

9

2011) (citations omitted). A district should only depart from the benchmark for good reason and "[n]othing in this case requires departure from the 25 percent standard award." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  Here the result obtained for the Class, if anything, warrants an upward adjustment to the benchmark fee. Class Counsel nonetheless do not request an upward adjustment but only seek to be awarded the benchmark fee of 25% of the recovery obtained for Class Members here.

Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (the "most critical factor is the degree of success obtained"); *Morris*, 54 Fed. Appx. at 664 (district court, granting a 33% fee, noted that class counsel achieved exceptional results in a risky and complicated class action); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976) ("[T]he amount of recovery, and end result achieved are of primary importance, for these are the true benefit to the client").

The payment of $7 million in cash to the Class will provide an excellent recovery. According to Lead Plaintiff's damages consultants, damages in the case could be as high as $36 million. Wernke Decl. ¶¶ 73, 117. Therefore, the $7 million Settlement Amount represents almost 20% of the maximum estimated damages, which is a significant recovery. *Id*. ¶ 118.  According to Cornerstone Research, the median settlement as a percentage of estimated damages in 2016 where estimated damages were less than $50 million was 7.3%. *Id. See* Cornerstone Research, "Securities Class Action Settlements: 2016 Review and Analysis," at p. 8, Figure 7, *available at* https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Filings-2016-YIR. Thus, the recovery is almost three times the median percentage recovery.

The Settlement is even better if one considers the arguments and defenses that would likely be advanced by Defendants at summary judgment and trial. The $36 million estimate of maximum damages is based on the Complaint's allegations that damages include the stock price decline on the two days following the June 30, 2014 publication of the FDA Warning Letter as well as the decline on August 1, 2014, the day following STAAR's filing of its Q2 2014 Form 10-Q and earnings call.  If Defendants were successful in convincing the Court or the jury that only the stock price decline on July 1, 2014 (the single day following the publication of the Warning Letter) was proximately caused by the fraud then the maximum damages would be reduced to only $15.6 million. *See* Wernke Decl. ¶ 75, 117.  Under that scenario, the $7 million Settlement would constitute a recovery of 45% of the estimated damages. *Id.* ¶ 118.  Whether 20% or 45% of the estimated maximum damages, the recovery for the Class is excellent.  *See, Omnivision*, 559 F. Supp. 2d at 1042 ($13.75 million settlement yielding 6% of potential damages was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"); *In re Cendant Corp. Litig.*, 264 F.3d 201, 240 (3d. Cir. 2001) (typical recoveries in securities class actions range from 1.6% to 14% of total losses). *See also* Wernke Decl. ¶ 118.

Thus, the results achieved by Plaintiff's Counsel, in light of the legal and factual complexity and magnitude of this case and the significant difficulties of establishing both liability and damages, are adequate, justifying an award of 25%.

### B.     The Risks Of The Litigation

Risk that continued litigation might result in the Class (and Class Counsel) not receiving any recovery at all is another important factor in determining a fair fee award. *See, e.g., In re Heritage Bond Litig.*, 2005 WL 1594389, at *14 (C.D. Cal. June 10, 2005) ("The risks assumed by Class Counsel, particularly the risk

of nonpayment or reimbursement of expenses, is a factor in determining counsel's proper fee award."); *Omnivision,* 559 F. Supp. 2d at 1047; *WPPSS*, 19 F.3d at 1299-301.

As discussed in the Wernke Declaration at ¶¶ 68-76, if this Action proceeded, numerous material uncertainties existed concerning liability and damages. In order to prevail on its claims, Lead Plaintiff would bear the burden of proving falsity, materiality, reliance, scienter, loss causation, and damages. Each of these issues would be vigorously contested.  For example, Defendants argued in their motion to dismiss that the statements about the consolidation going "according to plan", FDA compliance and the likelihood of FDA approval of the Company's new product were not false and misleading when made and accompanied by appropriate cautionary statements.  Even though the Court found in denying the motion to dismiss that Lead Plaintiff had adequately alleged the falsity of Defendants' statements, Defendants undoubtedly would have continued to press those arguments at summary judgment and/or trial.

Scienter is regarded as the most difficult element to prove in a securities fraud claim. *See In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001). Although Lead Plaintiff and Class counsel believe that the Defendants knowingly made false statements, satisfying Lead Plaintiff's burden of proof would, as in any case, be a challenge. *Vinh Nguyen v. Radient Pharm.,* 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) ("any claim requiring proof of an intentional mental state presents challenges."); *In re Immune Response Sec. Litig.*, 497 F.Supp.2d 1166, 1172 (S.D. Cal. 2007) ("The Court also recognized that the issues of scienter and causation are complex and difficult to establish at trial" and, as a result, "concludes that the settlement is a prudent course."). Defendants would undoubtedly challenge scienter by arguing and trying to prove that they were unaware of any significant FDA regulatory violations at the time

12

that they made their statements of compliance and that to the extent that they were aware of any violations they honestly believed that (i) the violations were not significant, (ii) were only preliminary findings by the FDA that could be amended, and (iii) could be easily resolved to the FDA's satisfaction without any impact on the approval of the Company's new product. In particular, Defendants have argued, and would continue to argue, that they had no basis to question the Company's compliance, at the very least, at any time prior to their March 12, 2014 statement of compliance, which was over four months into the Class Period. The acceptance by the Court or the jury of these arguments could eliminate some or all of the alleged false statements, and similarly affect the recovery of the Class.

Plaintiffs would also have had to prove loss causation and damages – that the revelation of the fraud caused the price of STAAR's stock to fall. These elements can only be proved through expensive, complex, and risky expert testimony. *In re Pfizer Inc. Sec. Litig.*, 2014 WL 3291230, at *3 (S.D.N.Y. July 8, 2014) (entering summary judgment in favor of defendants after excluding Plaintiffs' experts on damages pursuant to Daubert); see also *In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *9 (C.D. Cal. July 28, 2014) (noting that plaintiffs must turn to experts to disaggregate losses from nonactionable and actionable factors). Defendants would retain their own expert, who would testify that other factors, in whole or in part, caused STAAR's stock price to decline on July 1, and 2, 2014 and on August 1, 2014.

> In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions.

13

*In re Warner Comm. Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985); see also *Aarons v. BMW of N. Am., LLC*, 2014 WL 4090564, at *10 (C.D. Cal. Apr. 29, 2014) ("battle of the experts" are "inherently risky").

Specifically, Defendants would likely argue that any decline in STAAR's stock price other than on July 1, 2014, the day immediately following the June 30, 2014 publication of the FDA Warning Letter, is not recoverable. Rather, Defendants would argue that because STAAR's stock traded in an efficient market that reacted to information quickly, the decline in STAAR stock price on July 2, 2014 is not recoverable because it is temporally too far removed from the alleged "corrective disclosure" on June 30, 2014. That is, the stock price would have already fully incorporated the impact of the FDA Warning Letter on July 1, 2014 and the decline on July 2, 2014 was the result of something else.  Similarly, Defendants would argue that the decline in STAAR stock price on August 1, 2014, following the filing of STAAR's Q2 2014 Form 10-Q and earnings call is not recoverable because the information concerning the FDA Warning Letter was not sufficiently different from what had previously been disclosed to constitute "new" information that could be said to have proximately caused the decline in stock price. Defendants would likely further argue that even if any of the alleged corrective disclosures were found to have revealed the falsity of Defendants' statements, Lead Plaintiff would not be able to disaggregate the losses caused by those disclosures from losses caused by other non-actionable factors. If Defendants were successful in any of these arguments, it would significantly impact the amount of damages.  For example, if the jury determined that only the decline on July 1, 2014 was recoverable, estimated damages would drop to $15.6 million.

Had any of these arguments been accepted in whole or part, they could have eliminated or, at a minimum, dramatically limited any potential recovery for

the Settlement Class. Further, Lead Plaintiff would have had to prevail at several stages –summary judgment, trial – and if it prevailed on those on the appeals that were likely to follow. The Settlement avoids these litigation risks and guarantees the Settlement Class a favorable and immediate cash recovery of $7 million.

### C.   The Skill Required And The Quality And Efficiency Of The Work

The "prosecution and management of a complex national class action requires unique legal skills and abilities" – particularly in securities class actions. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008). Here, the quality of Plaintiff's Counsel's work on this case is reflected in the result obtained. The standing and prior experience of Plaintiff's Counsel are relevant in determining fair compensation. *See, e.g., Eltman v. Grandma Lee's Inc.*, 1986 WL 53400, at *9 (E.D.N.Y. May 28, 1986).  The Wernke Declaration includes a description of the background and experience of Plaintiff's Counsel. *See* Exs. 5-A, 5-B to Wernke Declaration. As that submission demonstrates, Plaintiff's Counsel has extensive and significant experience in the highly specialized field of securities class action litigation. The attorneys at Pomerantz and GP&M are among the most experienced and skilled practitioners in the securities litigation field and the firms have a long and successful track record of prosecuting securities cases throughout the country – including within this Circuit. Plaintiff's Counsel's reputation as experienced and competent counsel in complex class action cases, both willing and able to litigate the case to resolution, facilitated Plaintiff's Counsel's ability to negotiate the Settlement, ultimately resulting in the $7 million recovery for the Class. As stated by Ms. Yoshida,

> the advocacy on both sides of the case was of the highest caliber and counsel for both parties exhibited great effort, creativity, and zeal in advocating their positions.  I have experience with the principal attorneys working on this case for Lead Plaintiff (from the law firm of Pomerantz LLP) and for Defendants (from the law firm of Morrison

15

& Foerster LLP) from other cases I have mediated.  All counsel displayed the highest level of professionalism in carrying out their duties on behalf of their respective clients.  It is apparent from the submissions and presentations made by counsel before and during the mediation sessions, as well as from my numerous discussions with them, that they performed a thorough examination of the merits, valuation, and risk exposure of the claims and defenses in this action."

Ex. 4. ¶ 12.

At every stage of the proceedings, Plaintiff's Counsel had to perform with a high level of skill, efficiency, and professionalism. In the face of strong opposition from a highly respected securities defense firm, Plaintiff's Counsel assembled a case that survived Defendants' numerous attacks. The quality of Plaintiff's Counsel's work performed was extremely high.  As set forth above and in greater detail in the Wernke Declaration, Plaintiff's Counsel extensively developed the record by, among other things: (i) conducting a comprehensive investigation to prepare the Complaint, including review and analysis of STAAR's public SEC filings; research and other reports by securities and financial analysts covering STAAR; STAAR press releases and other public statements made by or about Defendants; news articles and other media reports about STAAR; transcripts of STAAR earnings calls and investor and industry conferences; and pricing, trading, and other data concerning STAAR common stock; (ii) identifying and interviewing numerous percipient witnesses; (iii) successfully opposing Defendants' motion to dismiss the complaint and motion to disqualify Plaintiff's Counsel, (iv) successfully obtaining class certification; (v) engaging and consulting with experts in several areas requiring specialized knowledge; (vi) researching the law applicable to the claims and potential defenses; (vii) pursuing extensive discovery (including the review of approximately 360,000 pages of documents produced by Defendants and third-parties); (viii) noticing and preparing for the deposition of STAAR's current and

former employees.  Moreover, Plaintiff's Counsel evaluated the merits and risks presented, and negotiated a very favorable amount for the Class. Such quality, efficiency, and dedication should be rewarded.

The quality of opposing counsel is also important in evaluating the quality of the work done by Plaintiff's Counsel. *See, e.g., In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *King Res.*, 420 F. Supp. at 634; *Arenson v. Bd. of Trade*, 372 F. Supp. 1349, 1354 (N.D. Ill. 1974). Plaintiffs were opposed in this litigation by a nationally respected firm, Morrison & Foerster LLP.  *See* Wernke Decl. ¶ 114. In the face of this knowledgeable and formidable defense, Plaintiff's Counsel was nonetheless able to develop a case that was sufficiently strong to overcome the heightened pleading standard of the PSLRA, obtain class certification, and persuade Defendants, and their insurance carriers, to settle on terms that are favorable to the Class.

### D.   The Contingent Nature Of The Case And The Financial Burden Carried By The Plaintiffs' Counsel

The Ninth Circuit recognizes that the determination of a fair fee must include consideration of the contingent nature of the fee and the difficulties that were overcome in obtaining the settlement. It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.  *See  In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 2650592, at *2 (N.D. Cal. July 6, 2011) (citing *WPPSS,* 19 F.3d at 1299). Contingent fees in risky cases that may exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose. *WPPSS*, 19 F.3d at 1299.

Plaintiff's Counsel has received no compensation over the course of the litigation and has incurred significant expenses in litigating for the benefit of the Class. Any fee award or expense reimbursement to Plaintiff's Counsel has always been at risk and completely contingent on the result achieved and on this Court's exercise of its discretion in making any award. *See* Wernke Decl. ¶¶ 107-108.

### E.     The Customary Fee

If this were not a class action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery. *See, e.g., Blum*, 465 U.S. at 903 n.* ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery."); *In re M.D.C. Holdings Sec. Litig.*, 1990 WL 454747, at *7 (S.D. Cal. 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery."); *Kirchoff*, 786 F.2d at 323 (40% contractual award if case had gone to trial). Thus, as the customary contingent fee in the private marketplace – 30% to 40% of the fund recovered – is even greater than the percentage-of-recovery fee requested in this case, Plaintiff's Counsel's request is quite reasonable.

Plaintiff's Counsel's efforts were performed and the result was achieved on a wholly contingent basis, despite significant risk and in the face of determined opposition. Under these circumstances, it necessarily follows that Plaintiff's Counsel is justly entitled to the award of a reasonable percentage fee based on the benefit conferred and the common fund obtained.  The fee requested is within the range of fees awarded by the courts in the Ninth Circuit in cases with similar recoveries.   Wernke Decl. ¶¶ 98-101 (collecting cases). Under all of the circumstances present here, a 25% fee plus expenses is fair and reasonable.

### F.   A Lodestar Cross-Check Shows the Fee Request Is Reasonable

Courts often compare an attorney's lodestar with a fee request made under the percentage of the fund method as a "cross-check" on the reasonableness of the requested fee. *See, e.g., Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1050 (9th Cir. 2002); *Fischel v. Equitable Life Assur.*, 307 F.3d 997, 1007 (9th Cir. 2002). "[T]he lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted [and] may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino*, 290 F. 3d at 1050. Significantly, in securities class actions it is common for a counsel's lodestar figure to be adjusted upward by some multiplier reflecting a variety of factors such as the effort expended by counsel, the complexity of the case, and the risks assumed by counsel.[6]

Here, the total lodestar for Plaintiffs' Counsel for all work done in this Action through September 8, 2017 is $1,654,692.25.[7]  *See* Wernke Decl. Exs. 5-A, 5-B.  Thus, Plaintiff's Counsel's fee request is equal to approximately 1.06

---

[6]  *See In re Ravisent Sec. Litig.*, 2005 WL 906361, *12 (E.D. Pa. April 18, 2005) (fee represented a multiplier of 3.1 of the lodestar); *In re Linerboard Antitrust Litig.*, 2004 WL 1221350, *16 (E.D. Pa. June 2, 2004) (noting that from 2001 through 2003, the average multiplier approved in common fund cases was 4.35); *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 150-51 (E.D. Pa. 2000) (lodestar of $1.2 million would require multiplier of 2.04 in order to match awarded fees of one-third of $7.3 million common fund); *In re Safety Components*, 166 F. Supp.2d 72, 103 (D.N.J. 2001) (lodestar of $534,000 would require multiplier of 2.81 in order to match awarded fees of $1.5 million); *In re Medical X-Ray Film Antitrust Litig.*, 1998 WL 661515, *7 (E.D.N.Y. Aug. 7, 1998) (fee represented a multiplier on the attorneys' lodestar of 1.67); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326-27 (E.D.N.Y. 1993) (the equivalent of a 1.72 multiplier was applied to the attorneys' lodestar).
[7]  The hours and lodestar submitted exclude all time devoted to Plaintiffs' Counsel's motion for fees and expenses.

times the lodestar, which is low compared to multipliers approved by courts. *See, e.g., Vizcaino,* 290 F.3d at 1051-52 (in approving a fee representing a multiple of 3.65 times counsel's lodestar, the court listed twenty-three shareholder settlements and the multipliers for each, in which the average multiplier was 3.28); *Roberti v. OSI Sys., Inc.*, 2015 WL 8329916, at *5 (C.D. Cal. Dec. 8, 2015) (approving settlement with lodestar multiplier of 2.2); *In re Hewlett-Packard Company Securities Litigation,* No. 11-cv-01404 (C.D. Cal. Sept. 15, 2014) (fee represented a multiplier of 1.9 of the lodestar); *In re Mercury Interactive Corp. Sec. Litig.*, 2011 WL 826797, at *2 (N.D. Cal. Mar. 3, 2011) (lodestar cross-check multiplier of 3.08 "is within the acceptable range"); *OmniVision*, 559 F. Supp. 2d at 1048 ("[C]ourts have approved multipliers ranging between 1 and 4."); *Steiner*, 248 Fed. App'x at 783 (upholding 25% fee award yielding multiplier of 6.85, finding that it "falls well within the range of multipliers that courts have allowed"); *Steinfeld v. Discover Fin. Servs.*, 2014 WL1309692, at *2-3 (N.D. Cal. Mar. 31, 2014) (finding a 3.5 multiplier reasonable); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) (approving attorneys' fees that resulted in lodestar multiplier of 2.83); *See also* Wernke Decl. ¶ 124 (collecting cases). Thus, this factor supports the requested fee.

### G. The Reaction Of The Settlement Class Supports The Requested Award

Over 8,759 Short-Form Notices were mailed to potential Class Members and a Summary Notice was published on the *GlobeNewswire* and in the *Investor's Business Daily* and the Long-Form and Proof of Claim was made available to the public on the Claims Administrator's website.  GCG Decl., ¶¶ 7-11. Class Members were informed in the Short-Form Notice that Plaintiff's Counsel would apply for attorneys' fees of up to 25% of the Settlement Fund,

plus reimbursement of litigation costs and expenses up to $350,000 and were advised of their right to object to Plaintiff's Counsel's fee request.  *Id*. Ex. A.

To date, there has been no request for exclusion and no objections to the requested fee.  *See Id.* ¶¶ 13-14.

## V.     PLAINTIFF'S COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

Plaintiff's Counsel's expenses are reasonable and were necessarily incurred as a part of Plaintiff's Counsel's efforts to achieve a very favorable recovery for the Class. To date, Plaintiff's Counsel has incurred expenses in an aggregate amount of $216,239.71 in prosecuting all claims in this Action. Wernke Decl. ¶ 129.  The $216,239.71 of expenses requested to be reimbursed are detailed in the declaration of Plaintiff's Counsel submitted to the Court in support of this Motion. *See* Wernke Decl. Exs. 5-A, 5-B. The Short-Form Notice apprised the Class Members that Plaintiff's Counsel would seek expenses in an amount not to exceed $350,000.

The Court should approve Plaintiffs' request for reimbursement of Plaintiffs' Counsel's expenses. "Reimbursement of taxable costs [in class action settlements] is governed by 28 U.S.C. § 1920 and Federal Rule of Civil procedure 54." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). Courts interpreting these rules have found that counsel for the class are entitled to reimbursement for those types of out-of-pocket expenses that an attorney would normally expect the client to pay.  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client") (citation omitted); *see also Immune Response*, 497 F. Supp. 2d at 1177; *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722, 725-26 (10th Cir. 1993) (expenses reimbursable if they would normally be billed to a client);

*Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) (same); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients") (citation omitted).

Plaintiff's Counsel has pursued this litigation knowing that its expenses could only be reimbursed (without interest) if the Class won at trial or obtained a settlement. Wernke Decl. ¶¶ 107, 129-130. Plaintiff's Counsel has had no incentive to incur – and did not incur– unnecessary expenses. *Id.* ¶ 131. The categories of expenses for which counsel seek reimbursement are the type of expenses routinely charged to paying clients and, therefore, should be reimbursed out of the common fund. *Id.* ¶¶ 132-135.

Among the significant expenses incurred by Plaintiff's Counsel on behalf of the Class was the cost of retaining Lead Plaintiff's experts, mediation fees, and document hosting fees – all of which was necessary for the successful prosecution and resolution of the Action on behalf of the Class. *Harris*, 24 F.3d at 19; *Immune*, 497 F.Supp. 2d at 1177. Other expenses include the cost of computerized legal research using Westlaw and Pacer, which should be (and are routinely) reimbursed. *In re UnitedHealth Group Inc. Shareholder Deriv. Litig.*, 631 F.3d 913, 918-19 (8th Cir. 2011). *See* Wernke Decl. ¶¶ 132-133.

Other significant expenses involved travel, lodging and related meals for the mediation, court appearances. *See id*. ¶ 134. Travel and lodging expenses were necessary to the prosecution of the action, were reasonable in amount and are properly charged against the fund created. *Thornberry v. Delta Air Lines*, 676 F.2d 1240, 1244 (9th Cir. 1982), *vacated on other grounds*, 461 U.S. 952 (1983); *Harris*, 24 F.3d at 19; *Immune*, 497 F.Supp. 2d at 1177; *In re McDonnell Douglas*

*Equip. Leasing Sec. Litig.*, 842 F. Supp. 733, 746 (S.D.N.Y. 1994); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 741 F. Supp. 84, 86 (S.D.N.Y. 1990).

Similarly, photocopying and scanning costs associated with document retrieval and filing, ECF filings, and comparable costs are customarily reimbursed in common fund cases. *See Harris*, 24 F.3d at 19; *Immune*, 497 F. Supp. 2d at 1177; *McDonnell Douglas*, 842 F. Supp. at 746.   Other expenses include providing notices to the Settlement Class pursuant to the PSLRA early notice provisions.

## VI.    THE AWARD TO LEAD PLAINTIFF SHOULD BE APPROVED

Lead Plaintiff Todd also requests that the Court award him $10,000 in connection with his lost time in his representation of the Class. The PSLRA provides that courts are empowered to approve such awards to reimburse plaintiffs for reasonable costs and expenses related to the representation of the class. *See* 15 U.S.C. §78u-4(a)(4). Lead Plaintiff has diligently and completely fulfilled his obligations as a representative plaintiff in the present action by: (1) reviewing the initial complaint and the amended complaints; (2) reviewing and commenting on all significant pleadings and briefs filed in the Action; (3) overseeing the litigation; and (4) communicating with counsel about the action.   Wernke Decl. Ex. 1 (Todd Decl.) ¶ 4. Moreover, Lead Plaintiff travelled to Los Angeles to prepare and sit for his class certification deposition.   As a result, he missed two full days of work. *See id.* ¶¶4, 10. Notably, Lead Plaintiff was the original named plaintiff in this action and the only individual that moved to be appointed Lead Plaintiff.   In short, if Mr. Todd had not shouldered the obligation to bring and prosecute this action with the determination and dedication that he has shown, the Class Members likely would have recovered nothing.   Courts routinely award lead

plaintiffs greater amounts. *E.g. In re Veritas Software Corp. Sec. Litig.*, 396 Fed. App'x 815, 816 (3d Cir. 2010) ($15,000 for each lead plaintiff); *Buccellato v. AT&T Operations, Inc.*, 2011 WL 4526673, at *4 (N.D. Cal. June 30, 2011) ($20,000 to lead plaintiff); *In re Xcel Energy, Inc., Sec., Deriv. & ERISA Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (approving a $100,000 award to lead plaintiffs, and noting that awards to lead plaintiffs are important because they further "the important policy role [lead plaintiffs] play in the enforcement of the federal securities laws on behalf of persons other than themselves"); *In re Giant Interatice Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 166 (S.D.N.Y. 2011) (awarding $10,000 as an incentive and for lost time); *In re Geron Corporation Securities Litigation*, 3:14-cv-01224-CRB (N.D. Cal. Jul. 21, 2017) (ECF No. 135) (awarding lead plaintiff $10,000 where case was settled prior to deposition (*see* ECF No. 129-7)).[8]

The reaction of the Class also strongly supports the requested award. The Long-Form Notice advised Class Members that Lead Plaintiff intended to apply

─────────────────────

[8] *See also Beaver County Employees' Retirement Fund et al. v. Tile Shop Holdings, Inc., et al.*, No. 0:14-cv-00786-TNL (D. Minn. June 14, 2017) (ECF No. 415) (awarding class representative $10,000 where case was settled after class certification and discovery during which class representative was deposed); *In re EZcorp, Inc., Securities Litigation.*, No. 1:14-cv-06834-ALC-AJP (S.D.N.Y. Apr. 26, 2017) (ECF No. 124) (awarding lead plaintiff $10,427.50 where case was settled during discovery, prior to class certification, and lead plaintiff was deposed); *KB Partners I, LP v. Pain Therapeutics, Inc.*, No. 1:11-cv-01034-SS (W.D. Tex. Dec. 16, 2016) (awarding class representative $38,500 where case was settled after discovery was completed and class representative travelled for his deposition); *In re Doral Financial Corp. Securities Litigation*, No. 3:14-cv-01393-GAG-BJM (D. P.R. Aug. 8, 2016) (ECF No. 116) (awarding $10,000 to each of the three co-lead plaintiffs where case was settled following ruling on motion to dismiss and lead plaintiffs did not sit for depositions)

to the Court for an award up to $10,000. GCG Decl. Ex. B. The deadline to file objections and to request exclusion to the Settlement is September 25, 2017.  To date, no objections or requests for exclusion have been received.  GCG Decl. ¶¶ 13-14.

In short, an award of $10,000 to Lead Plaintiff is warranted.

## VII.   CONCLUSION

Securities class actions are complex and laden with risk. There are numerous examples where Plaintiff's Counsel, in cases such as this, after the expenditure of thousands of hours, has received no compensation whatsoever. This complex litigation has been extremely hard-fought. From the beginning, Lead Plaintiff has been faced with determined adversaries represented by experienced and equally determined defense counsel. Without any assurance of success, Lead Plaintiff and his counsel pursued this Action to a conclusion that is highly beneficial to the Class. The Settlement represents a fair recovery on behalf of the Class and reflects the skill and dedication of Plaintiff's Counsel. It is respectfully requested that the Court approve the fee and expense application and enter the Order submitted herewith awarding Plaintiff's Counsel 25% of the Gross Settlement Fund plus reimbursement of $216,239.71 of expenses, and an award of $10,000 to Lead Plaintiff Todd.

Dated: September 11, 2017

Respectfully Submitted,


**POMERANTZ LLP**

/s/  Michael J. Wernke_____
Marc I. Gross
Jeremy A. Lieberman
Michael J. Wernke

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: migross@pomlaw.com
      jalieberman@pomlaw.com
      mjwernke@pomlaw.com

***Lead Counsel for Lead Plaintiff
and for the Class***

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy (#134180)
Robert V. Prongay (#270796)
Kevin Ruf (#136901)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
E-mail: info@glancylaw.com

***Liaison Counsel for Lead Plaintiff***

Class Counsel's Motion For Attorneys' Fees and Expenses 2:14-CV-05263-MWF-GJS

**CERTIFICATE OF SERVICE**

I, Michael J. Wernke, hereby declare under penalty of perjury as follows:

I am an attorney at Pomerantz LLP located at 600 Third Avenue, 20th Floor, New York, New York 10016. I am over the age of eighteen.

On September 11, 2017, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system: **NOTICE OF MOTION FOR APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I certify under penalty of perjury under the laws of the United States of America that the foregoing in true and correct.

Executed on September 11, 2017.

*/s/ Michael J. Wernke*

27